STATE OF NORTH CAROLINA v. LEROY ELWOOD MANN

No. 362A97

(Filed 5 April 2002)

## 1. Credit Card Crimes— financial transaction card theft— sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of financial transaction card theft under N.C.G.S. § 14-113.9 based on defendant's unauthorized use of his victim coworker's gas credit card, because: (1) a surveillance videotape of a gas station showed defendant at the station at the time of the purchase with the victim's credit card; and (2) the signature on the credit card receipt was not the victim's signature.

## 2. Kidnapping— first-degree—restraint to facilitate robbery—not inherent in robbery

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree kidnapping under N.C.G.S. § 14-39 based on the theory of defendant unlawfully restraining his victim coworker for the purpose of facilitating the commission of a robbery because the evidence, viewed in the light most favorable to the State, reveals that the restraint to which defendant subjected the victim far exceeded that necessary to and inherent in the armed robbery when: (1) defendant lured the victim to a store near defendant's home under the guise of discussing over lunch his unemployment benefits; (2) defendant then removed his victim to his apartment, where he repeatedly struck her in the face, breaking her nose and severely bruising both eyes; (3) defendant transported the victim to various ATM locations and coerced her into withdrawing money from her accounts; and (4) at some point during the course of these events, defendant forced the victim into the trunk of her car, where defendant eventually shot and killed the victim.

## 3. Robbery— intent to deprive owner of property—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of robbery with a dangerous weapon based on defendant's taking of his victim coworker's vehicle, because defendant took and subsequently abandoned the vehicle which

was enough to show his intent to permanently deprive the victim of her property.

**4. Homicide— first-degree murder—felony murder—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree murder under the theory of felony murder, because there was plenary evidence showing that defendant kidnapped, robbed, and killed his victim coworker as part of a single continuous transaction.

**5. Evidence— bad character—promotional photograph— defendant depicted as a rap musician—harmless error**

Even though the trial court erred in a first-degree murder, first-degree kidnapping, robbery with a dangerous weapon, and financial transaction card theft case by admitting evidence over defendant's objection of a promotional photograph in which defendant was depicted as a rap musician since the photograph did not tend to prove the existence of any fact of consequence to the determination of defendant's guilt, the error was not prejudicial in light of the overwhelming evidence of defendant's guilt.

**6. Homicide— first-degree murder—acting in concert instruction**

The trial court did not err by submitting to the jury an acting in concert instruction with respect to the charge of first-degree murder, because there was sufficient evidence that defendant and his wife acted in concert to perpetrate the chain of offenses against the victim when the evidence viewed in the light most favorable to the State reveals that: (1) both defendant and his wife were at their apartment at or near the time the victim was beaten and held against her will; (2) a witness testified that two cars, one resembling the victim's car, were on the same side of the bridge where the victim's body was later discovered; and (3) the murder weapon was found in the car defendant's wife had been driving.

**7. Criminal Law— prosecutor's argument—defendant wanted to be a rap star**

The trial court did not err by failing to intervene ex mero motu in a first-degree murder, first-degree kidnapping, robbery with a dangerous weapon, and financial transaction card theft case when the prosecutor argued that defendant was a "wanta be

rap star," because: (1) contrary to defendant's assertion, the prosecutor's remarks were not designed to incite the racial and cultural prejudices of the jurors; and (2) the prosecutor's remarks were intended to describe a possible motive for the crimes including defendant's need for financial means to further his musical aspirations.

**8. Criminal Law— prosecutor's argument—flight**

The trial court did not err by failing to intervene ex mero motu in a first-degree murder, first-degree kidnapping, robbery with a dangerous weapon, and financial transaction card theft case when the prosecutor argued flight to the jury even though the trial court denied the State's request for a flight instruction, because: (1) the trial court's decision to refrain from instruction on flight did not preclude the prosecutor from arguing the facts regarding defendant's behavior when approached by law enforcement officers for further questioning; (2) the prosecutor did not suggest to the jury that an instruction on flight was forthcoming; and (3) the prosecutor did not argue that the evidence of defendant's actions alone was sufficient to establish his guilt.

**9. Criminal Law— prosecutor's argument—defense counsel's absurd, distasteful, and disgusting inferences from the evidence**

The trial court did not err by failing to intervene ex mero motu in a first-degree murder, first-degree kidnapping, robbery with a dangerous weapon, and financial transaction card theft case when the prosecutor argued that defense counsel's inferences for the reason the victim agreed to meet defendant were absurd, distasteful, and disgusting inferences from the evidence, because the prosecutor's argument was well within the bounds of permissible closing argument since he was not attacking defense counsel, but was expressing outrage at the suggestion that the victim agreed to meet defendant for some illicit purpose.

**10. Sentencing— first-degree murder—felony murder— *Enmund/Tison* instruction**

The trial court did not commit error, much less plain error, in a first-degree murder case based on the felony murder rule by instructing the jury on the *Enmund/Tison* culpability issue because: (1) contrary to defendant's assertion, the finding by the jury that defendant was guilty of first-degree murder under the felony murder rule was not equivalent to a finding that defendant

lacked culpable intent; and (2) collateral estoppel did not preclude submission and resolution of this issue since the jury did not resolve the *Enmund/Tison* culpability issue upon rendering its guilty verdict.

**11. Sentencing— capital—aggravating circumstance—murder was especially heinous, atrocious, or cruel**

The trial court did not err in a capital first-degree murder case by submitting the N.C.G.S. § 15A-2000(e)(9) aggravating circumstance that the murder was especially heinous, atrocious, or cruel, because: (1) the evidence reveals that the victim was alive when defendant forced her into the trunk of her car; and (2) a jury could have reasonably inferred that the victim was conscious while trapped inside the trunk and that she tried desperately, but futilely, to free herself as she anticipated the moment when defendant would end her life.

**12. Sentencing— capital—aggravating circumstance—murder committed during course of armed robbery**

The trial court did not err in a capital first-degree murder case by submitting the N.C.G.S. § 15A-2000(e)(5) aggravating circumstance that the murder was committed during the course of an armed robbery even though defendant contends that proof of the armed robbery was necessary to establish the offense of kidnapping, which was the felony underlying defendant's first-degree murder conviction, because a crime alleged to be the purpose for which defendant confines and restrains the victim within the meaning of the kidnapping statute under N.C.G.S. § 14-39 does not constitute an element of the kidnapping offense.

**13. Sentencing— capital—aggravating circumstance—murder committed for pecuniary gain**

The trial court did not err in a capital first-degree murder case by submitting the N.C.G.S. § 15A-2000(e)(6) aggravating circumstance that the murder was committed for pecuniary gain, because the evidence was sufficient to support a finding that the expectation of pecuniary gain drove defendant to commit the crimes that culminated in the victim's murder.

**14. Sentencing— capital—death penalty proportionate**

The trial court did not err in a first-degree murder case by sentencing defendant to the death penalty, because: (1) the jury found defendant guilty of first-degree murder under the felony

murder rule; (2) the jury found the three aggravating circumstances that defendant committed the murder while engaged in the commission of a robbery, N.C.G.S. § 15A-2000(e)(5), that defendant committed the murder for pecuniary gain, N.C.G.S. § 15A-2000(e)(6), and that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9); and (3) defendant exhibited no remorse for his crimes and did not take responsibility, but instead took extraordinary measures to conceal them.

**15. Sentencing— aggravating factor—defendant took advantage of a position of trust or confidence**

The trial court erred by aggravating defendant's sentence for the convictions of robbery with a firearm and financial transaction card theft based on the trial court's finding as an aggravating factor under N.C.G.S. § 15A-1340.16(d)(15) that defendant took advantage of a position of trust or confidence, because: (1) the evidence at most showed that defendant and his victim coworker enjoyed an amiable work relationship and perhaps even a friendship; and (2) the evidence does not demonstrate the existence of a relationship between defendant and victim that was generally conducive to reliance of one upon the other.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Stephens (Donald W.), J., on 15 July 1997 in Superior Court, Wake County, upon a jury verdict finding defendant guilty of first-degree murder. On 29 March 1999, the Supreme Court allowed defendant's motion to bypass the Court of Appeals as to his appeal of additional judgments. Heard in the Supreme Court 12 December 2001.

*Roy Cooper, Attorney General, by John H. Watters, Special Deputy Attorney General, for the State.*

*Lemuel W. Hinton for defendant-appellant.*

BUTTERFIELD, Justice.

On 12 December 1995, the grand jury sitting in Wake County returned indictments against defendant Leroy Elwood Mann for financial transaction card theft, first-degree kidnapping, robbery with a dangerous weapon, and first-degree murder. On 23 April 1996, the grand jury issued a superseding indictment for robbery with a dangerous weapon. Defendant was tried capitally at the 23 June 1997 Criminal Session of Superior Court, Wake County, and was convicted

of first-degree murder upon the theory of felony murder. The jury also found defendant guilty of all the remaining crimes charged. Following a capital sentencing proceeding held pursuant to N.C.G.S. § 15A-2000, the jury recommended the death penalty for the murder conviction. On 15 July 1997, the trial court entered judgment accordingly. The trial court arrested judgment on the kidnapping conviction, as it was the basis of defendant's felony murder conviction. The trial court joined the remaining convictions for purposes of sentencing and imposed a term of 80 to 105 months imprisonment. For the reasons herein given, we conclude that as to the guilt-innocence phase and the capital sentencing proceeding, defendant received a fair trial, free from prejudicial error, and that the sentence of death was not disproportionate. However, for errors committed, we vacate the sentence imposed on defendant's convictions for robbery with a dangerous weapon and financial transaction card theft, and we remand these matters for a new sentencing hearing.

At trial, the State presented evidence tending to show that the victim, Janet Noble Hauser, was defendant's co-worker at Advanced Plastics, Inc. (API). On Sunday, 3 December 1995, API notified defendant that, because of a general reduction in the work force, he was being laid off from his employment and need not report to work the following day. On Monday, 4 December 1995, defendant called Hauser, the executive assistant and bookkeeper at API, and asked her to meet him for lunch to discuss his unemployment benefits. Hauser agreed and, at 12:15 p.m., left the office to meet defendant at the Fresh Market in Falls Village, across the street from the apartment complex where defendant resided with his wife and her daughter.

At approximately 1:00 p.m., Ronald Van Goor, the occupant of the apartment directly below defendant's, heard loud thumping noises coming from defendant's apartment. Van Goor testified that there was also an inordinate amount of vibration emanating from the upstairs apartment, the force of which caused a picture to fall from Van Goor's bedroom wall. According to Van Goor, the ruckus was so intense that it prevented him from taking a nap, and the commotion continued well over an hour.

Sometime between 1:30 and 2:00 p.m., Donna Timm, a receptionist at API, received a telephone call from Hauser, during which she stated, "This is Jan. I went to Chi-Chi's and had lunch. I'm not feeling well, I'm not coming back to work." The call originated from defendant's telephone number. Shortly thereafter, another call was placed

from that number to defendant's wife, Cynthia Mota-Mann, at her place of employment, the Department of Labor. After receiving the call, Mrs. Mann complained that she was not feeling well and asked a co-worker to drive her home. Mrs. Mann returned home at or around 2:15 p.m.

Minutes later, a series of financial transactions involving Hauser's credit and bank accounts began. At 2:26 p.m., someone purchased gasoline at the Tower Texaco gas station with Hauser's credit card. Video surveillance of the gas station revealed defendant as the person who used Hauser's card. Then, at 2:55 p.m., a $100.00 withdrawal was made from Hauser's account at the State Employees' Credit Union, using her ATM card. In the hour that followed, six additional withdrawals of varying amounts were attempted, three of which were completed successfully, at ATM machines located at Beacon Hill Plaza and Knightdale Crossing Shopping Center. Video surveillance of the ATM locations showed defendant in Hauser's presence when several of the transactions were made.

When Hauser failed to return home on the evening of 4 December 1995, her husband reported her missing to the Raleigh Police Department. Proceeding on information that Hauser had left work to meet defendant for lunch, the officers investigating her disappearance went to defendant's home to question him. Upon entering the apartment, the investigators detected a strong odor of bleach and what they believed to be paint or paint thinner. At the request of the officers, defendant voluntarily accompanied them to the police station for questioning. While at the station, defendant told the investigators that Hauser never showed up for their lunch appointment, that he had not seen her, and that he had no idea what had happened to her.

On the afternoon of 5 December 1995, Hauser's body, wrapped in a blanket, was discovered at the bottom of a ravine below the Falls Lake dam. An autopsy of the body revealed a gunshot wound to Hauser's chest, which the medical examiner determined to be the cause of death. Hauser's body also exhibited various facial bruises and lacerations, swelling around the eyes, and a broken nose. The medical examiner could not pinpoint the time of death, but concluded that it had occurred within twenty-four hours of her discovery.

Upon a search of defendant's apartment, officers discovered that one wall of the master bedroom had been freshly painted and that the

carpet had been recently cleaned with a chemical solution. Using an alternative forensic light source, the officers saw blood spattered on the wall underneath the new paint. A crime scene specialist testified that the pattern of the bloodstains was consistent with someone of Hauser's stature sustaining a severe beating about the head. A subsequent search of the car belonging to defendant's wife revealed a carpet-cleaning machine, cleaning chemicals, and a loaded nine-millimeter pistol.

Hauser's car was later discovered in a subdivision near Falls Lake. Investigators found a bullet hole inside the trunk of the car and recovered bullet fragments later determined to have been fired from the pistol found in Mrs. Mann's vehicle. They also found fingerprints on the underside of the trunk's lid at an angle suggesting that the owner of the prints was inside the trunk when they were left. The prints were later identified as Hauser's.

## GUILT-INNOCENCE

By assignments of error, defendant contends that the trial court erred in denying his motions to dismiss the charges of financial transaction card theft, first-degree kidnapping, robbery with a dangerous weapon, and first-degree murder. Defendant argues that the State failed to present sufficient evidence to establish that he perpetrated any of these offenses against Hauser. We readily disagree.

The applicable law is well-defined. "In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998). Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion. *State v. Frogge*, 351 N.C. 576, 584, 528 S.E.2d 893, 899, *cert. denied*, 531 U.S. 994, 148 L. Ed. 2d 459 (2000). As to whether substantial evidence exists, the question for the trial court is not one of weight, but of the sufficiency of the evidence. *State v. Lucas*, 353 N.C. 568, 581, 548 S.E.2d 712, 721 (2001). In resolving this question, the trial court must examine the evidence in the light most advantageous to the State, drawing all reasonable inferences from the evidence in favor of the State's case. *Id.* Moreover, "[c]ircumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988); *see also Frogge*, 351 N.C. at 585, 528 S.E.2d at 899.

[1] With regard to the charge of financial transaction card theft, N.C.G.S. § 14-113.9 provides that a person is guilty of the offense if "[h]e takes, obtains or withholds a financial transaction card from the person, possession, custody or control of another without the cardholder's. consent and with the intent to use it." N.C.G.S. § 14-113.9(a)(1) (1999). Within the meaning of this provision, a financial transaction card includes "any instrument or device whether known as a credit card . . . or by any other name, issued with or without fee by an issuer for the use of the cardholder . . . [i]n obtaining money, goods, services, or anything else of value on credit." N.C.G.S. § 14-113.8(4)(a) (1999).

Here, the indictment alleged that defendant unlawfully withheld Hauser's Texaco credit card from her control and possession without her consent and for an improper purpose. In support of this charge, the State presented a segment of the surveillance videotape of the Tower Texaco gas station and a credit-card receipt for the purchase of gasoline at approximately 2:26 p.m. on the afternoon of 4 December 1995. The tape showed defendant at the Texaco station at the time of the purchase, and according to the testimony of Hauser's supervisor at API, the signature on the receipt was not that of Hauser. This evidence, when considered in the light most beneficial to the State, furnished substantial evidence of each element of the crime of financial transaction card theft. Defendant's motion to dismiss the charge was properly denied.

[2] We turn now to the charge of first-degree kidnapping. Under N.C.G.S. § 14-39, a defendant commits the offense of kidnapping if he: (1) confines, restrains, or removes from one place to another; (2) a person; (3) without the person's consent; (4) for the purpose of facilitating the commission of a felony, doing serious bodily harm to the person, or terrorizing the person. *State v. Parker*, 354 N.C. 268, 282, 553 S.E.2d 885, 896 (2001); *see also* N.C.G.S. § 14-39(a) (1999). If the defendant does not release the victim in a safe place, or if he seriously injures the victim, he is guilty of kidnapping in the first degree. *Parker*, 354 N.C. at 282, 553 S.E.2d at 896; *see also* N.C.G.S. § 14-39(b).

The State's theory in the instant case was that defendant unlawfully restrained Hauser for the purpose of facilitating the commission of a robbery. Defendant contends that the only restraint shown by the State was that inherent in the robbery itself; therefore, the evidence was insufficient to establish the kidnapping offense. We are not persuaded.

In *State v. Irwin*, 304 N.C. 93, 282 S.E.2d 439 (1981), this Court concluded that "it was not the legislature's intent in enacting G.S. 14-39(a) to make a restraint which was an inherent, inevitable element of another felony, such as armed robbery or rape, a distinct offense of kidnapping thus permitting conviction and punishment for both crimes." *Id.* at 102, 282 S.E.2d at 446.

> The key question . . . is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping "exposed [the victim] to greater danger than that inherent in the armed robbery itself, [or that the victim was] subjected to the kind of danger and abuse the kidnapping statute was designed to prevent."

*State v. Pigott*, 331 N.C. 199, 210, 415 S.E.2d 555, 561 (1992) (quoting *Irwin*, 304 N.C. at 103, 282 S.E.2d at 446) (second alteration in original).

Viewed in the light most favorable to the State, the evidence showed that defendant lured Hauser to the Fresh Market near his home under the guise of discussing over lunch his unemployment benefits. Defendant then removed Hauser to his apartment, where he repeatedly struck her in the face, breaking her nose and severely bruising both eyes. Thereafter, he transported Hauser to various ATM locations and coerced her into withdrawing money from her accounts. The evidence further showed that at some point during the course of these events, defendant forced Hauser into the trunk of her car, where he eventually shot and killed her. We hold that the restraint to which defendant subjected Hauser far exceeded that necessary to and inherent in the armed robbery. Beating her and forcing her into the trunk " 'subjected [her] to the kind of danger and abuse the kidnapping statute was designed to prevent.' " *Id.* (quoting *Irwin*, 304 N.C. at 103, 292 S.E.2d at 446). Therefore, the trial court properly denied defendant's motion to dismiss the first-degree kidnapping charge.

[3] With respect to the charge of robbery with a dangerous weapon, the constituent elements are: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of the person is endangered or threatened." *Call*, 349 N.C. at 417, 508 S.E.2d at 518; *see also* N.C.G.S. § 14-87(a) (1999); *Frogge*, 351 N.C. at 585, 528 S.E.2d at 899. The intent required for the offense is the intent to permanently deprive the owner of the prop-

erty at the time of the taking. *State v. Richardson*, 308 N.C. 470, 474, 302 S.E.2d 799, 802 (1983). Furthermore,

> [t]o be found guilty of robbery with a dangerous weapon, the defendant's threatened use or use of a dangerous weapon must precede or be concomitant with the taking, or be so joined by time and circumstances with the taking as to be part of one continuous transaction. Where a continuous transaction occurs, the temporal order of the threat or use of a dangerous weapon and the taking is immaterial.

*State v. Olson*, 330 N.C. 557, 566, 411 S.E.2d 592, 597 (1992) (citation omitted):

In the present case, defendant was charged with armed robbery of Hauser's vehicle, a 1993 Nissan Altima valued at approximately $14,000. He contends that the charge should have been dismissed because there was insufficient evidence to show that he intended to deprive Hauser of the vehicle permanently. Defendant bases this argument on the fact that the vehicle was not sold or destroyed, but was ultimately discovered in a subdivision near the location of Hauser's body. This Court has said that "the intent to permanently deprive an owner of [her] property could be inferred where there was no evidence that the defendant ever intended to return the property, but instead showed a complete lack of concern as to whether the owner ever recovered the property." *State v. Barts*, 316 N.C. 666, 690, 343 S.E.2d 828, 843-44 (1986). Additionally, we said that by abandoning property, the thief "puts it beyond his power to return the property and shows a total indifference as to whether the owner ever recovers it." *Id.* at 690, 343 S.E.2d at 844. Here, the evidence that defendant took and subsequently abandoned the vehicle was sufficient to show his intent to permanently deprive Hauser of her property. Thus, we hold that in denying defendant's motion to dismiss the robbery charge, the trial court did not err.

[4] Lastly, we address defendant's contention that the evidence was insufficient to support the charge of first-degree murder under the theory of felony murder. A murder occurs during the " 'perpetration of a felony for purposes of the felony murder rule where there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is part of a series of incidents which form one continuous transaction.' " *State v. Trull*, 349 N.C. 428, 449, 509 S.E.2d 178, 192 (1998) (quoting *State v. Hutchins*, 303 N.C. 321, 345, 279 S.E.2d 788, 803 (1981)), *cert. denied*, 528 U.S. 835,

145 L. Ed. 2d 80 (1999). To prove felony murder as well as the underlying offense, the State need only demonstrate that the elements of both " 'occur[red] in a time frame that can be perceived as a single transaction.' " *Id.* (quoting *State v. Thomas*, 329 N.C. 423, 434-35, 407 S.E.2d 141, 149 (1991)). Taken in the light most favorable to the State, there was plenary evidence tending to show that defendant kidnapped, robbed, and killed Hauser as part of a single, continuous transaction. Accordingly, we hold that the trial court's decision denying defendant's motion to dismiss the charge of first-degree murder was entirely proper. Defendant's assignments of error are, therefore, overruled.

[5] By further assignment of error, defendant argues that the trial court erred in admitting into evidence, over defendant's objection, a promotional photograph in which he is depicted as rap musician "Doc Terra (Da Mann)." In the photograph, defendant is wearing a hooded parka and is standing on a mound of refuse. Defendant contends that the photograph had no probative value and that the State's sole purpose for introducing it was to establish his character for violence. Defendant argues that in our society, rap musicians have become synonymous with gang membership and criminal activity. Thus, defendant contends, in presenting this photograph, the State impermissibly put before the jury evidence of defendant's alleged bad character in order to show that he acted in conformity therewith. Defendant's argument is well taken.

Under Rule 401 of the North Carolina Rules of Evidence, relevant evidence is that having "any tendency" to establish "the existence of any fact that is of consequence to the determination of the action." N.C.G.S. § 8C-1, Rule 401 (1999). However, as regards character evidence, this Court has said that "[w]here a defendant has neither testified as a witness nor introduced evidence of his good character, the State may not present evidence of his bad character for any purpose." *State v. Sanders*, 295 N.C. 361, 373, 245 S.E.2d 674, 683 (1978). The State argues on appeal that the photograph was relevant for identification purposes in that it showed defendant wearing the same jacket that he was seen wearing in the surveillance videotapes on the day of the murder. At trial, however, the State offered no basis for introducing the photograph, and the transcripts of the trial suggest that defendant's identity as the person depicted in the surveillance videotapes was not at issue. In addition, the trial court admitted the photograph into evidence without explanation; therefore, the basis of the court's ruling is unclear. Nonetheless, we conclude that the trial court

erred, inasmuch as the photograph did not tend to prove the existence of any fact of consequence to the determination of defendant's guilt. This error notwithstanding, to establish prejudice, defendant must persuade this Court that had the trial court not admitted the photograph, a different outcome likely would have been reached. *See* N.C.G.S. § 15A-1443(a) (1999). Given the overwhelming evidence of defendant's guilt, we are not so persuaded. Therefore, we overrule this assignment of error.

**[6]** By additional assignment of error, defendant contends that the trial court erred in submitting to the jury an acting-in-concert instruction with respect to the charge of first-degree murder. Defendant argues that the State failed to present substantial evidence that he acted with another person in perpetrating the offense. We cannot agree.

The doctrine of acting in concert, as reaffirmed by this Court in *State v. Barnes*, 345 N.C. 184, 481 S.E.2d 44, *cert. denied*, 522 U.S. 876, 139 L. Ed. 2d 134 (1997), *and cert. denied*, 523 U.S. 1024, 140 L. Ed. 2d 473 (1998), is summarized as follows:

> "[I]f 'two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof.' "

*State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991) (quoting *State v. Westbrook*, 279 N.C. 18, 41-42, 181 S.E.2d 572, 586 (1971), *death sentence vacated*, 408 U.S. 939, 33 L. Ed. 2d 761 (1972)) (alterations in original), *quoted in Barnes*, 345 N.C. at 233, 481 S.E.2d at 71. For purposes of the doctrine, "[a] person is constructively present during the commission of a crime if he or she is close enough to be able to render assistance if needed and to encourage the actual perpetration of the crime." *State v. Willis*, 332 N.C. 151, 175, 420 S.E.2d 158, 169 (1992).

As we have previously held, a reasonable juror could have found that the robbery, kidnapping, and murder of Hauser were part of a single, continuous transaction. We further conclude that there was sufficient evidence that defendant and his wife acted in concert to perpetrate this chain of offenses against Hauser. The evidence placed both of them at their apartment at or near the time Hauser was

beaten and held against her will. Additionally, a witness testified that shortly after 11:00 p.m. on the night of Hauser's murder, he saw two cars parked within five feet of each other in the middle of the wet bridge at Falls Lake. The witness described the first car as a light-colored mid-sized vehicle, which resembled Hauser's beige Nissan Altima. The witness stated that as he got closer to the bridge, the cars slowly pulled away, and he saw what appeared to be a large white bag on the walkway near where the cars had been parked. The following day, Hauser's body was discovered in the spillway of the dam on the same side of the bridge as where the two cars had been seen. Hauser's body was wrapped in a light-colored blanket and appeared to have been thrown over the railing of the bridge. Additionally, on the day after the murder, the murder weapon was found in the car defendant's wife had been driving. This evidence, taken together and in the light most favorable to the State, was sufficient to warrant an instruction on the doctrine of acting in concert with respect to the charge of first-degree murder. Defendant's assignment of error, therefore, fails.

By assignments of error, defendant contends that, in violation of his right to a fair trial under the Sixth Amendment to the United States Constitution, the prosecutor engaged in misconduct during the guilt phase closing arguments. For this reason, defendant maintains, he deserves a new trial. Again, we disagree.

"The scope of jury arguments is left largely to the control and discretion of the trial court, and trial counsel will be granted wide latitude in the argument of hotly contested cases." *Call*, 349 N.C. at 419, 508 S.E.2d at 519. Accordingly, counsel is entitled to argue the evidence presented and all reasonable inferences that follow. *Id.* Where, as in this case, the defendant failed to object to the allegedly improper remarks at trial, the question for this Court on review is whether the remarks complained of were so grossly improper as to require the trial court's intervention *ex mero motu. Trull*, 349 N.C. at 451, 509 S.E.2d at 193. We have said that " 'only an extreme impropriety on the part of the prosecutor will compel this Court to hold that the trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken.' " *State v. Davis*, 353 N.C. 1, 31, 539 S.E.2d 243, 263 (2000) (quoting *State v. Richardson*, 342 N.C. 772, 786, 467 S.E.2d 685, 693, *cert. denied*, 519 U.S. 890, 136 L. Ed. 2d 160 (1996)), *cert. denied*, —— U.S. ——, 151 L. Ed. 2d 55 (2001). Thus, to warrant a new trial, the prosecutor's remarks must

have perverted or contaminated the trial such that they rendered the proceedings fundamentally unfair. *Call,* 349 N.C. at 420, 508 S.E.2d at 519. In assessing the impropriety of the remarks, this Court must view them "in the context in which they were made and in light of the overall factual circumstances to which they referred." *Id.*

**[7]** During his summation, the prosecutor stated the following:

> The defendant sits here in court with his lawyers. You can see him. These (indicating) are other pictures of the defendant. This (indicating) one has been described as a promotional photograph. You can infer, if you want to, what that would be used to promote. Doc Terra—De Man.

> Is that some sort of musical connotation? Is this some sort of wanta (sic) be rap star? Is it a man who's frustrated because he's in the back of some kind of plant back there, doing as best to make ends meet, and he gets laid-off, and this (indicating) is what he aspires to be? What is between him as he was in that plant and this (indicating)? His ability to promote himself, which requires money. And, if you don't have money, you might find a way to get some.

Defendant contends that in referring to him as a "wanta (sic) be rap star," the prosecutor intended to inflame the passions and prejudices of the jury. He alleges a medley of state and federal constitutional violations occasioned by the remark. However, since defendant neglected to assert any of his constitutional claims at trial, he has failed to preserve them for appellate review. *See* N.C. R. App. P. 10(b)(1); *Call,* 349 N.C. at 419, 508 S.E.2d at 519. Moreover, when "viewed in the context in which they were made and in light of the overall factual circumstances to which they referred," *Call,* 349 N.C. at 420, 508 S.E.2d at 519, the prosecutor's remarks were not, as defendant contends, designed to incite the racial and cultural prejudices of the jurors. The remarks were intended to describe a possible motive for the crimes: defendant's need for financial means to further his musical aspirations. Therefore, we hold that the remarks were not grossly improper and that the trial court did not abuse its discretion in failing to intervene *ex mero motu.*

**[8]** Defendant next complains that it was error for the prosecutor to argue flight to the jury since the trial court denied the State's request for a flight instruction. The evidence showed that T.C. Jones, an investigator with the Raleigh Police Department, approached defend-

ant on 5 December 1995 and said that he needed to talk to defendant. Defendant responded, "F— you. I'm not stopping for anybody. I'm tired of you guys harassing me." When Officer Jones ordered defendant to stop, defendant began to run, and a foot chase ensued. After running a considerable distance, an officer who had come to assist Jones tackled defendant. Defendant continued to struggle, but the officers managed to handcuff him and take him into custody.

In view of the trial court's conclusion that this evidence was insufficient to warrant an instruction on flight, defendant asserts that the following prosecutorial argument was grossly improper:

> Leroy knows what the deal is. He knows what is going on. . . . He is the only person at that time that knew what had gone on.
>
> So, when he was approached out in North Raleigh, what does he do? He runs, because he knows the jig is up at that point. He has an idea of why they're chasing him. They're chasing him for a credit card that they know about. Why is he really fighting though? You don't fight that much over a credit card case.
>
> The jig is up.

The trial court's decision to refrain from instructing on flight did not preclude the prosecutor from arguing the facts regarding defendant's behavior when approached by law enforcement officers for further questioning. We have said that "a prosecutor in a capital trial may argue all the facts in evidence, the law, and all reasonable inferences drawn therefrom." *Trull*, 349 N.C. at 452, 509 S.E.2d at 194. The prosecutor did not suggest to the jury that an instruction on flight was forthcoming. Nor did he argue that the evidence of defendant's actions alone was sufficient to establish his guilt. Therefore, we find no gross improprieties in the prosecutor's remarks.

[9] Further, defendant contends that the prosecutor inappropriately argued the following:

> Now, when you go back there and you start deliberating, you recall the evidence as you heard it and it was presented. And, you make whatever inferences you care to from there.
>
> . . . You listen to what [defense counsel] has to say. You think about any inferences he might ask you to draw from the evidence.
>
> . . . .

STATE v. MANN

[355 N.C. 294 (2002)]

But, if you need to infer something, you remember that she [Hauser] was just too nice. And, this (indicating) is what happened to her.

. . . .

And, any inference that you draw otherwise into some kind of other activity, is absolutely absurd, distasteful, disgusting to think that—to think that it would be any other way than that when you see [the victim's husband] over there (indicating), and you look at Janet Hauser right there (indicating).

Defendant claims that "[t]he argument denigrates defense counsel for asking the jury to find absurd, distasteful and disgusting inferences from the evidence and is a direct attack on counsel." It is true that counsel "may not make uncomplimentary comments about opposing counsel, and should 'refrain from abusive, vituperative, and opprobrious language, or from indulging in invectives.'" *State v. Sanderson*, 336 N.C. 1, 10, 442 S.E.2d 33, 39 (1994) (quoting *State v. Miller*, 271 N.C. 646, 659, 157 S.E.2d 335, 346 (1967)). Here, however, the prosecutor did no such thing. This argument was not, as defendant contends, an attack on defense counsel, but an expression of outrage at the suggestion that the victim agreed to meet defendant for some illicit purpose. As such, the comments were well within the bounds of permissible closing argument. This Court's most recent pronouncement on the parameters of acceptable closing argument came in *State v. Jones*, 355 N.C. 117, 558 S.E.2d 97 (2002), where we stated the following:

The power and effectiveness of a closing argument is a vital part of the adversarial process that forms the basis of our justice system. A well-reasoned, well-articulated closing argument can be a critical part of winning a case. However, such argument, no matter how effective, must: (1) be devoid of counsel's personal opinion; (2) avoid name-calling and/or references to matters beyond the record; (3) be premised on logical deductions, not on appeals to passion or prejudice; and (4) be constructed from fair inferences drawn only from evidence properly admitted at trial. Moreover, professional decorum requires that tactics such as name-calling and showmanship must defer to a higher standard.

355 N.C. at 135, 558 S.E.2d at 108-09. Because the arguments about which defendant complains do not breach any of the standards articulated in *Jones*, we reject defendant's assignments of error.

STATE v. MANN

[355 N.C. 294 (2002)]

## CAPITAL SENTENCING PROCEEDING

**[10]** Additionally, defendant contends that the trial court committed plain error by instructing the jury in accordance with *Enmund v. Florida*, 458 U.S. 782, 73 L. Ed. 2d 1140 (1982), and *Tison v. Arizona*, 481 U.S. 137, 95 L. Ed. 2d 127 (1987). In *Enmund*, the United States Supreme Court held that imposition of the death penalty is forbidden under the Eighth and Fourteenth Amendments to the United States Constitution as to a defendant "who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." 458 U.S. at 797, 73 L. Ed. 2d at 1151. The Supreme Court revisited the issue in *Tison* and held that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." 481 U.S. at 158, 95 L. Ed. 2d at 145. Defendant argues that by finding him guilty of first-degree murder based on the felony murder rule, as opposed to premeditated and deliberate murder, the jury necessarily found that he did not possess the intent to kill. Therefore, defendant contends, the State was barred from relitigating the *Enmund-Tison* culpability issue during the sentencing proceeding, and he should have received a life sentence as a matter of law. Defendant's contention lacks merit.

Initially, we note that defendant failed to object to the trial court's submission of the *Enmund-Tison* instruction at trial and, thus, has sought review of this issue pursuant to the plain error doctrine. To establish plain error, defendant must demonstrate not only that there was error, but also that had the error not occurred, the outcome of the proceeding probably would have been different. *State v. Golphin*, 352 N.C. 364, 472, 533 S.E.2d 168, 238 (2000), *cert. denied*, 532 U.S. 931, 149 L. Ed. 2d 305 (2001). Defendant has failed to make such a showing.

This Court has previously acknowledged that "intent to kill is not an essential element of first-degree murder . . . under the felony murder rule." *State v. York*, 347 N.C. 79, 97, 489 S.E.2d 380, 390 (1997). However, neither is the absence of murderous intent. As we explained in *State v. Thomas*, 325 N.C. 583, 386 S.E.2d 555 (1989),

> First-degree murder based upon the felony murder rule has only two elements: (1) the defendant knowingly committed or attempted to commit one of the felonies indicated in N.C.G.S. § 14-7, and (2) a related killing. Whether the defendant com-

mitted the killing himself, intended that the killing take place, or even knew that a killing might occur is irrelevant. More specifically, a killing during the commission or attempt to commit one of the felonies indicated in the statute is murder in the first degree without regard to premeditation, deliberation or *malice*.

*Id.* at 603, 386 S.E.2d at 567 (citations omitted).

Contrary to defendant's argument, the finding by the jury that defendant was guilty of first-degree murder under the felony murder rule was not equivalent to a finding that he lacked culpable intent. Since the jury did not resolve the *Enmund-Tison* culpability issue upon rendering its guilty verdict, collateral estoppel did not, as defendant contends, preclude submission and resolution of this issue during the capital sentencing proceeding. Accordingly, we hold that the trial court committed no error, much less plain error, in instructing the jury pursuant to the requirements of *Enmund*, 458 U.S. 782, 73 L. Ed. 2d 1140, and *Tison*, 481 U.S. 137, 95 L. Ed. 2d 127. Defendant's assignment of error fails.

[11] By assignment of error, defendant contends that there was insufficient evidence to support the trial court's submission to the jury of the aggravating circumstance that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9) (1999). Defendant contends that the evidence supporting this circumstance was the same evidence necessary to establish the kidnapping offense. We must disagree.

With regard to the (e)(9) aggravating circumstance, this Court has said,

> [I]t is appropriate when the level of brutality involved exceeds that normally found in first-degree murders or when the murder in question is conscienceless, pitiless, or unnecessarily torturous to the victim. It also arises when the killing demonstrates an unusual depravity of mind on the part of the defendant. Among the types of murders that meet the above criteria are those that are physically agonizing or otherwise dehumanizing to the victim and those that are less violent but involve the infliction of psychological torture.

*State v. Bates*, 343 N.C. 564, 584-85, 473 S.E.2d 269, 280 (1996) (citations omitted), *cert. denied*, 519 U.S. 1131, 136 L. Ed. 2d 873 (1997). An example of psychological torture is when the victim is left "in

[her] last moments aware of but helpless to prevent impending death." *State v. Hamlet,* 312 N.C. 162, 175, 321 S.E.2d 837, 846 (1984).

In the instant case, the State presented ample evidence, independent of that necessary to establish the kidnapping offense, to justify the submission of the especially heinous, atrocious, or cruel aggravating circumstance. The evidence is undisputed that Hauser was alive when defendant forced her into the trunk of her car. David Edington, a crime scene specialist with the City-County Bureau of Identification, testified that a set of Hauser's fingerprints was found on the interior trunk lid of the vehicle. Edington stated that the prints were "at an angle pointing out," which indicated that Hauser left them while trapped inside the trunk. He further testified that someone had torn an opening in the plastic liner that separated the trunk from the rear seat and that the investigators discovered fibers matching Hauser's clothing inside the opening. Additionally, Edington testified that the armrest on the rear seat of Hauser's vehicle folded down to permit access to the interior of the trunk from the passenger area of the car. He stated that fibers consistent with Hauser's clothing were also discovered on the armrest. Presented with this evidence, a juror could have reasonably inferred that Hauser was conscious while trapped inside the trunk and that she tried desperately, but futilely, to free herself as she anticipated the moment when defendant would end her life. Accordingly, we hold that the trial court committed no error in submitting the (e)(9) aggravating circumstance. Defendant's assignment of error is overruled.

**[12]** Defendant further assigns error to the trial court's submission, as an aggravating circumstance, that the murder was committed during the course of an armed robbery, N.C.G.S. § 15A-2000(e)(5). Defendant contends that because proof of the armed robbery was necessary to establish the offense of kidnapping, the felony underlying his first-degree murder conviction, use of the armed robbery as an aggravating circumstance deprived him of the constitutional protection against double jeopardy. Defendant acknowledges, however, that this Court previously rejected similar reasoning in *State v. Banks,* 295 N.C. 399, 245 S.E.2d 743 (1978), *overruled on other grounds by State v. Collins,* 334 N.C. 54, 431 S.E.2d 188 (1993).

In *Banks,* we reiterated the long-standing principle that a crime alleged to be the *purpose* for which the defendant confines and restrains the victim within the meaning of N.C.G.S. § 14-39 does not constitute an element of the kidnapping offense:

The charges of crime against nature, assault with intent to commit rape[,] and robbery with a dangerous weapon were alleged in the bill of indictment charging kidnapping as the *purposes* for which the defendant confined and restrained the victim. The charges so alleged were not *elements* of the offense of kidnapping which the State had to prove as is the case of the underlying felony in the felony murder rule. When the State proves the elements of kidnapping and the purpose for which the victim was confined and restrained, conviction of the kidnapping may be sustained. Thus, the crimes of crime against nature, assault with intent to commit rape[,] and robbery with a dangerous weapon are separate and distinct offenses and are punishable as such.

*Id.* at 406, 245 S.E.2d at 748 (citing *State v. Dammons*, 293 N.C. 263, 237 S.E.2d 834 (1977)). We see no reason to deviate from well-settled precedent in this area of the law; therefore, defendant's assignment of error is overruled.

[13] By additional assignment of error, defendant contends that there was insufficient evidence to warrant submission of the aggravating circumstance that the murder was committed for pecuniary gain, N.C.G.S. § 15A-2000(e)(6). Defendant's position is that pecuniary gain could not have served as the motive for the murder because the financial transactions were accomplished long before the murder took place. We must disagree.

"The gravamen of the pecuniary gain aggravating circumstance is that 'the killing was for the purpose of getting money or something of value.' " *State v. Jennings*, 333 N.C. 579, 621, 430 S.E.2d 188, 210 (quoting *State v. Gardner*, 311 N.C. 489, 513, 319 S.E.2d 591, 606 (1984), *cert. denied*, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985)), *cert. denied*, 510 U.S. 1028, 126 L. Ed. 2d 602 (1993). This aggravating circumstance examines the defendant's motive and is proper for the jury's consideration where there is evidence that "[t]he hope of pecuniary gain provided the impetus for the murder." *State v. Oliver*, 302 N.C. 28, 62, 274 S.E.2d 183, 204 (1981).

In the case *sub judice*, the State's evidence showed that two months prior to the murder, defendant requested a $3,000 loan from his employer, Debra Judd, the owner of API. He explained that he was being evicted from his apartment and that he needed the money to obtain a new residence. Judd denied defendant's loan request. Shortly thereafter, defendant was placed on partial lay-off, which was his work status when he received word on 3 December 1995 that he was

being laid off altogether. The morning following his lay-off notice, defendant called Donna Tabron, an acquaintance who worked at the North Raleigh Hilton, and asked her to lunch. When Tabron refused, defendant called Hauser and asked her to meet him for lunch to discuss his unemployment benefits. Upon her arrival, defendant removed her to his apartment and beat her. Then, he transported her to several ATM locations where he forced her to withdraw money from her accounts. After obtaining the maximum withdrawal amounts from Hauser's accounts, defendant forced her into the trunk of her car, where he ultimately shot and killed her. Viewing this evidence, as we must, in the light most favorable to the State, *see State v. Moore*, 335 N.C. 567, 611, 440 S.E.2d 797, 822, *cert. denied*, 513 U.S. 898, 130 L. Ed. 2d 174 (1994), we conclude that the evidence was sufficient to support a finding that the expectation of pecuniary gain drove defendant to commit the crimes that culminated in Hauser's murder. Therefore, we overrule defendant's assignment of error.

## PRESERVATION

Defendant brings forward several additional issues that he concedes this Court has previously decided adverse to his position. These issues are: (1) that the trial court erred in denying defendant's motion to dismiss the indictment for first-degree murder on the grounds that the short-form indictment is fatally defective and, therefore, unconstitutional; (2) that the trial court erred by denying defendant's motion to increase the number of his peremptory challenges; (3) that the trial court erred in denying defendant's motion to prohibit the "death qualification" of the jury; (4) that the trial court committed plain error by instructing the jurors with respect to Issues Three and Four that they "may," rather than "must," consider any relevant mitigating evidence found to exist; and (5) that the trial court erred in submitting the (e)(9) aggravating circumstance on the grounds that it is unconstitutionally vague. In raising these issues, defendant urges this Court to reconsider its prior decisions and preserves his right to argue these issues in the event of further review. Having carefully examined defendant's arguments, we are not persuaded that we should depart from our prior holdings as to these issues, and we decline to do so.

## PROPORTIONALITY REVIEW

[14] Having concluded that defendant's capital sentencing hearing was free from error, we must now review and determine (1) whether the record supports the aggravating circumstances found by the jury

and upon which the sentence of death was based; (2) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. *See* N.C.G.S. § 15A-2000(d)(2).

In the present case, the jury found defendant guilty of first-degree murder under the theory of felony murder. In addition, the jury found the existence of all three aggravating circumstances submitted: (1) that defendant committed the murder while engaged in the commission of a robbery, N.C.G.S. § 15A-2000(e)(5); (2) that defendant committed the murder for pecuniary gain, N.C.G.S. § 15A-2000(e)(6); and (3) that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). After a meticulous and thorough examination of the record, transcripts, and briefs in this case, we conclude that the evidence fully supports each of the aggravating circumstances submitted to and found by the jury. Moreover, we have found nothing in the record to suggest that the sentence of death in this case was imposed under the influence of passion, prejudice, or any other arbitrary factor. Accordingly, we now turn to our final statutory duty of proportionality review.

In conducting a proportionality review, our objective is to " 'eliminate the possibility that a person will be sentenced to die by the action of an aberrant jury. ' " *State v. May*, 354 N.C. 172, 186, 552 S.E.2d 151, 160 (2001) (quoting *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988)). Thus, we compare the instant case to other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). To date, there have been only seven such cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, 522 U.S. 900, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983).

We conclude that the present case bears no substantial similarity to any of the cases in which this Court has found the death penalty

disproportionate. In only two of the seven disproportionate cases did the jury find the especially heinous, atrocious, or cruel aggravating circumstance. *Stokes*, 319 N.C. 1, 352 S.E.2d 653; *Bondurant*, 309 N.C. 674, 309 S.E.2d 170. This case is readily distinguishable from both. In *Stokes*, we emphasized that the defendant was seventeen years old at the time of the murder, that he had an IQ of 63, that he acted in concert with four accomplices, and that the record was devoid of evidence that he was the ringleader. 319 N.C. at 21, 352 S.E.2d at 664. We found the death sentence disproportionate because of the defendant's young age and because a much older codefendant who participated in "the same crime in the same manner" received only a life sentence. *Id.* By contrast, defendant in the instant case was twenty-seven years old at the time of the murder, and all evidence suggests that he instigated the chain of criminal activity that ended in Hauser's death. In *Bondurant*, this Court found the death penalty disproportionate because the defendant, after shooting the victim, immediately showed genuine contrition and concern for the victim's life. 309 N.C. at 694, 309 S.E.2d at 182-83. He took the victim to the hospital to obtain medical attention. *Id.* In addition, the defendant voluntarily talked to the police and confessed to shooting the victim. *Id.* Here, defendant exhibited no remorse, and instead of taking responsibility for his crimes, he took extraordinary measures to conceal them. He wrapped Hauser's body in a blanket and threw it into the ravine at Falls Lake. He bleached and painted his walls in order to hide her bloodstains and, with his wife's assistance, rented a carpet-cleaning machine to remove all traces of Hauser's blood from his carpet.

Furthermore, as noted previously, the jury in the present case found three aggravating circumstances to exist. Of the seven disproportionate cases, only two involved multiple aggravating circumstances. *See Young*, 312 N.C. 669, 325 S.E.2d 181; *Bondurant*, 309 N.C. 674, 309 S.E.2d 170. In *Young*, this Court focused on the failure of the jury to find as an aggravating circumstance that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). 312 N.C. at 691, 325 S.E.2d at 194. In this case, however, the jury found the (e)(9) aggravating circumstance, which this Court has held is sufficient, by itself, to support imposition of the death penalty. *State v. Bacon*, 337 N.C. 66, 110 n.8, 446 S.E.2d 542, 566 n.8 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995). Additionally, *Bondurant*, as discussed above, is plainly distinguishable. Thus, we can find no significant similarity between this case

and those in which this Court has concluded that the death penalty was disproportionate.

In conducting the proportionality review, it is also appropriate to compare the instant case with those in which this Court has found the death penalty proportionate. *McCollum*, 334 N.C. at 244, 433 S.E.2d at 164. However, we need "not undertake to discuss or cite all of those cases each time we carry out that duty." *Id.* Here, it suffices to say that we conclude, based on a judicious review of all the cases in the pool, that this case is more similar to cases in which we have found the death penalty proportionate than to those in which we have found the penalty disproportionate or to those in which juries have consistently recommended sentences of life imprisonment. In particular, we note that this case bears a strong resemblance to *State v. Gainey*, 355 N.C. 73, 558 S.E.2d 463 (2002), wherein this Court upheld the death penalty. In *Gainey*, the defendant and an accomplice lured their victim to a church in order to steal his car. *Id.* at 89-90, 558 S.E.2d at 474. When the victim arrived, the defendant and his cohort forced the victim into the trunk of the car and shot him while he lay helpless and crying for help. *Id.* at 90, 558 S.E.2d at 474-75. They then drove to a wooded area, dragged the victim's body into the woods, and covered it with pine straw. *Id.* at 82, 558 S.E.2d at 470.

Based on the nature of the crime and the characteristics of this defendant, we conclude that the death sentence imposed in this case was neither excessive nor disproportionate. Accordingly, we leave defendant's conviction for first-degree murder and sentence of death undisturbed.

## NONCAPITAL SENTENCING

[15] By further assignment of error, defendant contends that the trial court erred in aggravating his sentence for the convictions of robbery with a firearm and financial transaction card theft, which were consolidated for purposes of sentencing. Defendant argues that the record lacked sufficient evidence to support the trial court's finding as an aggravating factor that he took advantage of a position of trust or confidence. N.C.G.S. § 15A-1340.16(d)(15) (1999). We are constrained to agree.

In *State v. Daniel*, 319 N.C. 308, 354 S.E.2d 216 (1987), this Court considered the "trust or confidence" factor in the context of the relationship between a mother and her newborn child. We said that a

STATE v. MANN

[355 N.C. 294 (2002)]

finding of this aggravating factor did not require that the victim consciously regard the defendant as one in whom she placed her trust or confidence. *Id.* at 311, 354 S.E.2d at 218. We held that "[s]uch a finding depend[ed] instead upon the existence of a relationship between the defendant and victim generally conducive to reliance of one upon the other." *Id.* Our courts have upheld a finding of the "trust or confidence" factor in very limited factual circumstances. *See, e.g., State v. Farlow*, 336 N.C. 534, 444 S.E.2d 913 (1994) (factor properly found where nine-year-old victim spent great deal of time in adult defendant's home and essentially lived with defendant while mother, a long-distance truck driver, was away); *State v. Arnold*, 329 N.C. 128, 404 S.E.2d 822 (1991) (factor properly found where defendant conspired to kill her husband, who came to believe that defendant had a change of heart and ended her extramarital affair with another); *State v. Potts*, 65 N.C. App. 101, 308 S.E.2d 754 (1983) (factor properly found where defendant shot best friend who thought of defendant as a brother), *disc. rev. denied*, 311 N.C. 406, 319 S.E.2d 278 (1984); *State v. Baucom*, 66 N.C. App. 298, 311 S.E.2d 73 (1984) (factor properly found where adult defendant sexually assaulted his ten-year-old brother); *State v. Stanley*, 74 N.C. App. 178, 327 S.E.2d 902 (factor properly found where defendant raped nineteen-year-old mentally retarded female who lived with defendant's family and who testified that she trusted and obeyed defendant as an authority figure), *disc. rev. denied*, 314 N.C. 546, 335 S.E.2d 318 (1985). *But see Erlewine*, 328 N.C. 626, 403 S.E.2d 280 (factor not properly found where defendant shared an especially close relationship with his drug dealer, the murder victim); *State v. Midyette*, 87 N.C. App. 199, 360 S.E.2d 507 (1987) (factor not properly found where defendant and victim had been acquainted for approximately one month before the murder and where victim had once asked defendant to join her and her sister for breakfast at victim's apartment), *aff'd per curiam*, 322 N.C. 108, 366 S.E.2d 440 (1988); *State v. Carroll*, 85 N.C. App. 696, 355 S.E.2d 844 (factor not properly found where defendant and victim had met only one and a half days before the murder and had decided to take a trip together in defendant's car), *disc. rev. denied*, 320 N.C. 514, 358 S.E.2d 523 (1987).

In the case *sub judice*, the State's evidence showed that defendant and Hauser worked at API, a small company with fourteen employees, for approximately one year. According to Albert Tripp, a shift supervisor at API, Hauser showed particular concern for defendant following the lay-offs and asked Tripp how defendant had responded to the news. When defendant called Hauser and asked her

to meet him for lunch to discuss his unemployment benefits, she agreed. Further, the evidence showed that Hauser occasionally drove defendant home from work when he had no transportation.

Viewed in the light most favorable to the State, this evidence, at most, showed that defendant and Hauser enjoyed an amiable working relationship, perhaps even a friendship. The evidence does not, however, demonstrate "the existence of a relationship between the defendant and victim generally conducive to reliance of one upon the other." *Daniel*, 319 N.C. at 311, 354 S.E.2d at 218. The trial court, therefore, erred in finding that defendant took advantage of a position of trust or confidence to commit the offenses against Hauser. Accordingly, we vacate defendant's sentence on the robbery and financial transaction convictions and remand for a new sentencing hearing.

NO. 95CRS100098, FIRST-DEGREE MURDER: NO ERROR;

NO. 95CRS100097, ROBBERY WITH A DANGEROUS WEAPON, AND 95CRS99884, CREDIT CARD THEFT: JUDGMENT VACATED AND REMANDED FOR RESENTENCING.