STATE OF NORTH CAROLINA
v.
JULIE ANN NOBLE

No. COA12-734

Filed 16 April 2013

1. **Homicide—involuntary manslaughter—providing alcohol to a minor—sufficiency of evidence**

   The trial court did not err by denying defendant's motion to dismiss for insufficient evidence a charge of involuntary manslaughter that arose from underage drinking in defendant's home. The State presented substantial evidence that defendant knowingly provided and allowed the consumption of alcohol as part of a plan, scheme, system, or design that created an environment in which the victim could possess and consume alcohol.

2. **Evidence—prior crimes or bad acts—providing alcohol to minors**

   The trial court did not err in an involuntary manslaughter prosecution that arose from underage drinking in defendant's home by allowing the State to present evidence of defendant's alleged prior bad acts. The testimony in question was probative of a plan by defendant to create an environment where the victim felt comfortable possessing and consuming alcohol. Any error from testimony that defendant's husband had once encouraged the victim to consume alcohol in their home was harmless considering the other substantial evidence of defendant's guilt.

STATE v. NOBLE

[226 N.C. App. 531 (2013)]

**3. Evidence—prior crimes or bad acts—limiting instruction—
not prejudicial**

In an involuntary manslaughter prosecution that arose from
providing alcohol to minors, the trial court did not err by allowing
evidence of defendant's prior bad acts. The evidence was probative
of whether defendant possessed knowledge of the victim's age and
had a plan to make an environment that encouraged the victim to
possess and consume alcohol. Furthermore, the trial court properly
instructed the jury that the evidence was admitted for the limited
purpose of showing that defendant had knowledge of the victim's
age and a plan to create an environment that encouraged his con-
sumption of alcohol.

Appeal by defendant from judgment entered 18 November 2011 by
Judge Gary M. Gavenus in Transylvania County Superior Court. Heard in
the Court of Appeals 29 January 2013.

*Attorney General Roy Cooper, by Assistant Attorney General
Teresa M. Postell, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate
Defenders Jon H. Hunt and Benjamin Dowling-Sendor, for
defendant-appellant.*

HUNTER, Robert C., Judge.

Julie Ann Noble ("defendant") appeals from the judgment entered
after a jury found her guilty of involuntary manslaughter for her involve-
ment in the death of Joseph Daniel Furr ("Daniel") who died from alco-
hol poisoning at defendant's home. On appeal, defendant argues that
the trial court erred by: (1) denying her motion to dismiss the charge
of involuntary manslaughter for insufficient evidence; and (2) allowing
the State to present evidence of defendant's alleged prior bad acts in
violation of Rule 403 and Rule 404(b) of the North Carolina Rules of
Evidence. After careful review, we find no error.

**Background**

Before trial, defendant sought to exclude the State's evidence of
defendant's alleged prior bad acts relating to underage persons possess-
ing and consuming alcohol at defendant's home. After the trial court
conducted a *voir dire* hearing to listen to the State's evidence, it denied

defendant's motion. The evidence presented at trial tended to establish the following.

In 2008, defendant resided in Brevard, North Carolina with her husband, Allen Noble, and two sons, Zachary ("Zach") and Cody. Defendant often hosted parties at her home for Zach, Cody, and their friends during which guests under the age of 21 would consume alcohol. The alcohol at some of these gatherings was provided by defendant and her husband. As attendance at these parties increased, however, underage guests would bring their own alcohol.

Trek Parker, a friend of Daniel, often visited defendant's home and saw defendant drinking with underage guests. At one of these parties, Trek saw Daniel drinking alcohol in the presence of defendant. Because the alcohol was set out in coolers around the house, Trek believed that the alcohol Daniel was drinking was provided by defendant and her husband. Adam Parker also testified that he attended parties at defendant's home which were often held in the basement of the house and attended mostly by individuals under 21 years old. Adam testified that he would consume alcohol and play drinking games at these parties in the presence of defendant and that defendant knew he was under 21. According to Adam, defendant was conscientious about not allowing anyone who had been drinking to drive home; defendant would collect the car keys of the guests at these parties and insisted that they use designated drivers when leaving.

In October or November of 2008, defendant was seen at the grocery store with Daniel who was pushing a grocery cart containing nine cases of beer. Defendant paid for the beer and left the store with Daniel. Brittany Reece testified that she accompanied Daniel to a 2008 Halloween party at defendant's home during which defendant offered shots of alcohol to Daniel and other underage persons.

Early on the morning of 20 December 2008, the Transylvania Sheriff's Office responded to a complaint of a loud party and underage drinking at defendant's home. When two detectives arrived at defendant's home they found defendant outside with a number of intoxicated underage individuals. The detectives asked to conduct a safety sweep of the house. The detectives explained to defendant that they were concerned there were additional underage people drinking alcohol in the home and that they "needed to check to make sure they're all right because you can die from alcohol poisoning." Although initially uncooperative, defendant allowed the detectives into her home. In the basement level of the house, the detectives noticed empty beer cans and liquor bottles lying around and

they found several underage persons who had been drinking alcohol, including Daniel. The officers smelled alcohol on Daniel's breath, determined he was 19 years old, and cited him for underage possession of alcohol. Defendant was cited for resisting, obstructing, and delaying an officer as well as aiding and abetting a person less than 21 years of age to possess or consume alcohol.

On 26 December 2008, defendant purchased two bottles of Kentucky Supreme bourbon at the ABC store in Brevard. That night, defendant ate dinner with her husband, her sons, and three guests, Daniel, Rinski Brouwer, and James McDaniel. At approximately 11:30 p.m., Zack, Cody, Daniel, Rinski, and James went to the basement of the house to play pool and watch television. Zach testified that Daniel retrieved an unopened bottle of Kentucky Supreme bourbon from his backpack and that Zach, James, and Daniel drank mixed drinks made from the bottle of bourbon. When defendant came down to the basement after dinner, Daniel put the bottle of bourbon away but resumed drinking after she left. By the time Zack went to bed at approximately 2:30 a.m., Daniel was "pretty drunk." Later that morning, when Cody was getting ready to go to work he discovered Daniel sitting at a table in the basement slumped over and unresponsive. James attempted to revive Daniel by performing CPR, but was unsuccessful. Rinski testified that defendant and her husband came down to the basement and began cleaning up by throwing away the bottles of alcohol before calling 911. Daniel's autopsy revealed that he died of alcohol poisoning.

Defendant was charged with involuntary manslaughter based on the unlawful act of aiding and abetting a person under the age of 21 to possess or consume alcohol in violation of N.C. Gen. Stat. § 18B-302. At the conclusion of all of the evidence, defendant moved to dismiss the charge for insufficient evidence. The motion was denied. The jury found defendant guilty of involuntary manslaughter, and the trial court sentenced defendant to a term of 16 to 20 months imprisonment. Defendant appeals.

## Discussion

### I. Motion to Dismiss

[1] Defendant argues that the trial court erred by denying her motion to dismiss the charge of involuntary manslaughter for insufficient evidence. We disagree.

When a defendant makes a motion to dismiss for insufficient evidence "the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a

lesser offense included therein, and (2) of defendant's being the per-petrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455, *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "Substantial evidence is such relevant evi-dence as a reasonable mind might accept as adequate to support a con-clusion." *State v. Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favor-able to the State, giving the State the benefit of every reasonable infer-ence and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). When presented with circumstantial evidence, " 'the court must consider whether a reasonable inference of defendant's guilt may be drawn from the circumstances.' " *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 919 (1993)). If so, it is the jury's duty to determine if the defendant is actually guilty. *Id.*

"The elements of involuntary manslaughter are: (1) an unintentional killing; (2) proximately caused by either (a) an unlawful act not amount-ing to a felony and not ordinarily dangerous to human life, or (b) culpa-ble negligence." *State v. Hudson*, 345 N.C. 729, 733, 483 S.E.2d 436, 439 (1997). A proximate cause is an act which "caused or directly contrib-uted to the death." *State v. Cummings*, 301 N.C. 374, 377, 271 S.E.2d 277, 279 (1980). There may be more than one proximate cause of death, and criminal responsibility attaches so long as one of the proximate causes is attributable to a criminal act of the defendant. *See id.* "[T]he question of whether [a] defendant's conduct was the proximate cause of death is a question for the jury." *State v. Bailey*, 184 N.C. App. 746, 749, 646 S.E.2d 837, 839 (2007).

The alleged unlawful act that the State argued supported the charge of involuntary manslaughter was that defendant aided and abetted a person under the age of 21 with the possession or consumption of an alcoholic beverage in violation or N.C. Gen. Stat. § 18B-302.

> A person is guilty of a crime by aiding and abetting if (i) the crime was committed by some other person; (ii) the defend-ant knowingly advised, instigated, encouraged, procured, or aided the other person to commit that crime; and (iii) the defendant's actions or statements caused or contributed to the commission of the crime by that other person.

*State v. Goode*, 350 N.C. 247, 260, 512 S.E.2d 414, 422 (1999). "An aider or abettor is a person who is actually or constructively present at the scene of the crime and who aids, advises, counsels, instigates or encourages another to commit the offense." *State v. Barnette*, 304 N.C. 447, 458, 284 S.E.2d 298, 305 (1981). Aiding and abetting is not founded upon the defendant's mere presence at the scene of the crime. *See Goode*, 350 N.C. at 260, 512 S.E.2d at 422. Rather, "to be guilty [the defendant] must aid or actively encourage the person committing the crime or in some way communicate to this person his intention to assist in its commission." *Id.*

Defendant argues that the State was required to prove that defendant provided Daniel with the alcohol he drank the morning of his death, specifically a bottle of Kentucky Supreme bourbon. Because, defendant contends, the State's evidence created no more than mere suspicion as to whether defendant gave Daniel the bottle of bourbon from which he was drinking the morning of his death, the trial court erred in failing to dismiss the charge against her. Contrary to defendant's argument, the State was not required to prove that defendant provided Daniel with the alcohol that he consumed and which caused his death. Rather, the State had to prove: (1) that Daniel was under the age of 21 and possessed malt beverage, spirituous liquor, or mixed beverage or consumed any alcoholic beverage; (2) that defendant aided or encouraged Daniel to possess or consume that alcohol; (3) that defendant knew or had reason to know that Daniel was under the age of 21 at the time of the crime; and (4) that defendant was over the age of 21. *See* N.C. Gen. Stat. § 18B-302(b), (c)(2) (2011).

The evidence established that at the time of Daniel's death defendant was over the age of 21 and that Daniel was 19 years old. The State also presented evidence that defendant knew that Daniel was under the age of 21 at the time of his death. On 8 December 2008, a few weeks before Daniel's death, defendant assisted Daniel with an employment application for a job at defendant's place of employment. Defendant testified that she completed the application form for Daniel and wrote his date of birth on the form, 16 February 1989. Furthermore, the State presented substantial evidence that Daniel consumed alcohol and that this led to his death as defendant's son testified that Daniel was drinking bourbon on the morning he died from alcohol poisoning.

The State also produced substantial evidence that defendant "knowingly advised, instigated, encouraged, procured, or aided[,]" *Goode*, 350 N.C. at 260, 512 S.E.2d at 422, Daniel in possessing or consuming the alcohol that caused his death. The evidence established that defendant

frequently hosted parties at her home during which defendant was aware that underage people, including Daniel, consumed alcohol. On at least one occasion, defendant was seen offering alcohol to Daniel, and defendant knew the Daniel was under the age of 21. The State presented substantial evidence that defendant's actions of allowing Daniel to consume, and providing Daniel with, alcohol were part of a plan, scheme, system, or design that created an environment in which Daniel could possess and consume alcohol and that her actions were done knowingly and were not a result of mistake or accident. Viewed in the light most favorable to the State, we conclude the evidence was sufficient to allow a reasonable juror to conclude that defendant assisted and encouraged Daniel to possess and consume the alcohol that caused his death. Therefore, the trial court did not err in denying defendant's motion to dismiss the charge of involuntary manslaughter.

## II. Rule 404(b) Evidence

**[2]** Defendant also contends that the trial court erred in allowing the State to present evidence of defendant's alleged prior bad acts in violation of Rule 403 and 404(b) of the North Carolina Rules of Evidence in that the only relevance of the evidence was to establish defendant's propensity to commit the crime, was unfairly prejudicial, and was confusing to the jury. We disagree.

The Supreme Court of North Carolina has recently clarified the standard of review for evidentiary rulings under Rules 403 and 404(b) in *State v. Beckelheimer*, __ N.C. __, 726 S.E.2d 156 (2012).

> When the trial court has made findings of fact and conclusions of law to support its 404(b) ruling, as it did here, we look to whether the evidence supports the findings and whether the findings support the conclusions. We review *de novo* the legal conclusion that the evidence is, or is not, within the coverage of Rule 404(b). We then review the trial court's Rule 403 determination for abuse of discretion.

*Id.* at __, 726 S.E.2d at 159.

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2011). The rule, however, provides for the admission of such evidence if offered "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident." *Id.* Rule 404(b) is a

general rule of inclusion of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but one *exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

> Thus, even though evidence may tend to show other crimes, wrongs, or acts by the defendant and his propensity to commit them, it is admissible under Rule 404(b) so long as it also "is relevant for some purpose other than to show that defendant has the propensity for the type of conduct for which he is being tried."

*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990) (quoting *State v. Bagley*, 321 N.C. 201, 206, 362 S.E.2d 244, 247 (1987) (citation omitted), *cert. denied*, 108 S. Ct. 1598, 99 L. Ed. 2d 912 (1988)). Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2011).

When determining whether evidence of a defendant's other acts is admissible under Rule 404(b), the trial court must also consider the similarity between, and temporal proximity of, the crime charged and the act of which evidence is being offered. *Beckelheimer*, __ N.C. at __, 726 S.E.2d at 159. "Prior acts are sufficiently similar 'if there are some unusual facts present in both crimes' that would indicate that the same person committed them," *id.* (quoting *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 890-91 (1991)), and "go to a purpose other than propensity," *id.* __ N.C. at __, 726 S.E.2d at 160. Finally, even if the trial court concludes the evidence is relevant to something other than the defendant's propensity to commit the crime, as well as sufficiently similar and temporally related to the crime charged, the evidence may be excluded under Rule 403 if the trial court determines that admission of the evidence would result in unfair prejudice, confusion of the issues, or would mislead the jury. N.C. Gen. Stat. § 8C-1, Rule 403.

Defendant contends the trial court erred in allowing the State to present evidence: that defendant provided her home as a place for individuals under the legal drinking age, including Daniel, to possess and consume alcohol; that defendant offered Daniel and other underage persons alcohol at these parties; that defendant purchased alcohol at a

grocery store while accompanied by Daniel; and the defendant was cited for aiding and abetting Daniel and other persons less than 21 years old to possess or consume alcohol one week before Daniel's death.

In response to defendant's motion to exclude this evidence, the trial court conducted a *voir dire* hearing after which it concluded that the evidence was admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, the absence of mistake, and the absence of accident. The trial court found that in the events testified to by the witnesses defendant was present when alcohol was purchased in the presence of an underage person or was present and aware that underage persons were offered and/or consumed alcoholic beverages on defendant's property. These findings are supported by the record as detailed above, and the findings support the trial court's conclusion that the testimony was admissible as evidence of a plan, knowledge, and absence of mistake or accident in aiding and abetting possession and consumption of alcohol by persons under 21 years old.

The evidence of parties at defendant's home at which defendant provided alcohol to Daniel and other underage persons, and those parties at which the underage persons brought their own alcohol is probative of defendant's plan to create an environment at her home where Daniel felt comfortable possessing and consuming alcohol. The evidence of defendant purchasing beer while Daniel was pushing defendant's grocery cart was admissible for this same reason. The evidence of the prior charge of aiding and abetting was probative of defendant's knowledge that in the parties often held in her basement underage persons possessed and consumed alcohol, and that her actions of permitting such conduct in her home could result in their deaths.

Defendant contends that the testimony of Trek Parker and Adam Perkins that defendant held parties at her home at which underage persons, including Daniel, consumed alcohol concerned events that occurred two to three years before Daniel's death and were too remote to be admissible. Because this testimony by Parker and Perkins was probative of a plan by defendant to create an environment where Daniel felt comfortable possessing and consuming alcohol, we conclude the events these witnesses described were not too remote in time from the crime charged to be inadmissible. *See State v. Patterson*, 149 N.C. App. 354, 364, 561 S.E.2d 321, 327 (2002) (concluding that evidence of the defendant's prior bad acts of providing alcohol to minors and inviting them to his home for parties where he sexually abused them were not too remote to be relevant evidence of a common scheme or plan even though they occurred ten and fifteen years earlier).

Defendant also argues that testimony that her husband had once encouraged Daniel to consume alcohol in their home was inadmissible and prejudicial. Assuming without deciding that this testimony was inadmissible under Rule 404(b), we conclude that the error was harmless; considering the other substantial evidence of defendant's guilt, there is no reasonable possibility that the jury would have reached a different verdict had this testimony about defendant's husband not been admitted. *State v. Willis*, 332 N.C. 151, 168, 420 S.E.2d 158, 165 (1992) (concluding that although the trial court erred in admitting evidence of prior acts under Rule 404(b) the error was harmless as it is was not likely that the jury would have reached a different conclusion in light of the other evidence of the defendant's guilt); N.C. Gen. Stat. § 15A-1443 (2011).

[3] Lastly defendant contends that even if this evidence was admissible under Rule 404(b), the trial court erred by not excluding the evidence under Rule 403 as it was unfairly prejudicial and confused the jury. Defendant argues these prior acts were not relevant to the charge of involuntary manslaughter and led the jury to believe the prior acts evidence could serve as evidence of the unlawful act that was the basis of the involuntary manslaughter of Daniel. In support of her argument, defendant points to the jury's request for clarification of the trial court's instructions on proximate cause during its deliberations.

As discussed above, we conclude the evidence of defendant's prior acts was relevant to the charge of involuntary manslaughter as it was probative of whether defendant possessed knowledge of Daniel's age, and a plan to make an environment that encouraged Daniel to possess and consume alcohol. The trial court was aware of the potential of prejudice and properly instructed the jury that the evidence was admitted for the limited purpose of showing that defendant had "the knowledge, which is a necessary element of the crime charged in this case and there existed in the mind of the defendant a plan, scheme, system or design involving the crime charged in this case, absence of mistake and the absence of accident." *See State v. Hipps*, 348 N.C. 377, 406, 501 S.E.2d 625, 642 (1998) (rejecting argument that the trial court abused its discretion in admitting evidence of prior bad acts where the "court was aware of the potential danger of unfair prejudice to defendant . . . was careful to give a proper limiting instruction to the jury" and the evidence was "highly probative" of the defendant's knowledge that his actions would likely kill the victim). That the jury requested clarification of the meaning of proximate cause and that the trial court provided additional explanation of the term is not sufficient to establish that the trial court abused its discretion in admitting the evidence.

## Conclusion

For the reasons stated above, we conclude the trial court did not err in denying defendant's motion to dismiss or in admitting the evidence of defendant's prior bad acts.

NO ERROR.

Judges McCULLOUGH and DAVIS concur.