IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-592

Filed 19 December 2023

Cabarrus County, No. 21CRS51196

STATE OF NORTH CAROLINA

v.

RONALD MCCROREY, Defendant.

Appeal by defendant from judgment entered 17 November 2022 by Judge
Martin B. McGee in Cabarrus County Superior Court. Heard in the Court of Appeals
15 November 2023.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Justin Isaac
> Eason, for the State.*
>
> *Sarah Holladay for defendant-appellant.*

FLOOD, Judge.

Ronald McCrorey ("Defendant") appeals his conviction for Death by
Distribution, arguing the trial court erred when it (1) denied his motion to dismiss
and (2) improperly admitted Rule 404(b) evidence. For the reasons discussed below,
we hold the trial court did not err.

## I. Facts and Procedural Background

In March 2020, Michelle Hooper ("Michelle") returned home to live with her
mother, Lisa Hooper ("Ms. Hooper"), after having spent a few months at a residential
drug treatment center in Charlotte, North Carolina. In an effort to keep Michelle

away from heroin and cocaine, Ms. Hooper imposed strict rules: curfews were to be observed, random drug tests were to be performed, and substance abuse group meetings were to be attended via Zoom. Ms. Hooper feared that Michelle returning home to her "former using area" might trigger a relapse.

On the evening of 24 March 2020, Michelle attended an Alcoholics Anonymous meeting on Zoom from 7:00 p.m. until 8:00 p.m. At 9:33 p.m., Michelle sent a text message to her childhood friend, Kayla Wood ("Kayla"), saying "[s]et your alarm for 830. I'll be there at 9am and leave by 1:30. And like I said I wanna [sic] buy some crack[.]"

The next morning, Michelle left home and told Ms. Hooper that she had a doctor's appointment but would return home around 1:00 p.m. Michelle did not have a doctor's appointment—instead, Michelle drove to the hotel room where Kayla was staying. Upon arrival, Michelle gave Kayla fifty dollars with the understanding that the money would be used to buy crack cocaine and heroin. Approximately fifteen minutes later, Defendant arrived at the hotel, and Kayla met him downstairs while Michelle waited in Kayla's hotel room. Kayla paid Defendant one hundred dollars for one gram of crack cocaine and one gram of heroin, which were to be split between Kayla and Michelle. The drugs purchased from Defendant came in four separate baggies, each containing one half gram of a substance Michelle and Kayla believed to be either crack cocaine or heroin. After purchasing the drugs, Kayla went back to her hotel room, where she gave Michelle two baggies—one containing crack cocaine and

one containing heroin. Michelle and Kayla each did a small amount of heroin from Kayla's baggie and smoked crack cocaine from each of their respective baggies. From there, Kayla and Michelle went to a parking lot and smoked more crack cocaine. Michelle then dropped Kayla off at a park and drove back home so as not to break the curfew imposed by Ms. Hooper.

Michelle arrived back home and spent some time with her family before going to a church gathering with Ms. Hooper. After leaving the church gathering, Michelle and Ms. Hooper returned home and went to bed.

The following morning on 26 March 2020, Ms. Hooper awoke at 6:00 a.m. and noticed a light on in Michelle's room. Speaking through the door, Michelle told Ms. Hooper that she had a headache and was going back to bed. Ms. Hooper went on with her morning, left the house to run errands, and eventually returned at approximately noon. When she returned home, Ms. Hooper noticed the light in Michelle's room was still on. When Ms. Hooper opened the door, she found Michelle doubled over, deceased, with an address book open to the contact information for Kayla on the bed next to her.

Ms. Hooper immediately called 911. Upon arriving at the home, officer Dallas Hurley ("Officer Hurley") went into Michelle's room where he found her with a tourniquet around her arm and several needles in the room. A second officer, Sergeant Christopher Gorman ("Sergeant Gorman") secured the scene. Sergeant Gorman collected four empty baggies from Michelle's room. No drugs were recovered

from Michelle's room or car. The four empty baggies found in Michelle's room were not sent off for lab testing.

When the police later located Kayla, she was "spaced out" and "nodding off" in front of a convenience store. When the officers told Kayla about Michelle's death, Kayla began crying and explained that she and Michelle had purchased drugs from Defendant at a hotel the day before. Kayla then consented to the officers seizing her cell phone. A review of the data on Kayla's cell phone revealed text messages sent on 25 March 2020 between Kayla and Defendant, setting up the sale of drugs.

After Michelle's death, forensic pathologist Dr. Jonathan Privette ("Dr. Privette") performed an autopsy and sent tissue samples to Dr. Justin Brower ("Dr. Brower"), a forensic toxicologist, for testing. When the results of the toxicology report were returned, they showed the presence of benzoylecgonine, which is a metabolite of cocaine, and fentanyl in Michelle's blood. Both Dr. Privette and Dr. Brower opined that the level of fentanyl in Michelle's blood was within the fatal range, and given the totality of the circumstances, Michelle's death was consistent with a fentanyl overdose. Both doctors also agreed, however, that the level of cocaine metabolites in Michelle's system were, by themselves, high enough to be fatal. Notably absent from the toxicology report was the presence of heroin, which was one of the two substances Michelle and Kayla believed they had purchased from Defendant.

On 11 April 2021, Defendant's trial began in Cabarrus County Superior Court. At trial, several witnesses were called to testify including Officer Hurley, Sergeant

Gorman, Dr. Privette, Dr. Brower, Ms. Hooper, and Kayla. Of particular note on appeal is the testimony given by Kayla regarding previous drug sale transactions she had with Defendant. After a lengthy exchange between counselors and the trial judge outside the presence of the jury, the trial court allowed Kayla to testify regarding prior drug sales involving Defendant as evidence under Rule 404(b) to show Defendant's intent, identity, and common scheme or plan.

On direct examination, when asked if she ever "put any other individuals in contact with [] Defendant for the purpose of buying drugs," Kayla answered "[y]eah." Additionally, Kayla testified about the two or three times where she and Michelle purchased drugs from Defendant, and she indicated that the sale on 25 March was "generally consistent with how [they] had previously purchased drugs from [] Defendant."

At the conclusion of the trial, a jury found Defendant guilty of Death by Distribution. Defendant was sentenced to seventy to ninety-six months' imprisonment. Defendant gave an oral notice of appeal following the verdict.

## II. **Jurisdiction**

This case is properly before this Court as an appeal from a final judgment of a superior court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2021).

## III. **Analysis**

On appeal, Defendant argues the trial court made two errors: first, when it denied his motion to dismiss; and second, when it admitted evidence of his prior drug

sales under Rule 404(b) of the North Carolina Rules of Evidence. We take the analysis of each argument in turn.

## A. Motion to Dismiss

Defendant begins by arguing the trial court erred when it denied his motion to dismiss because the State failed to present substantial evidence that (1) he sold fentanyl, rather than heroin, to Kayla; (2) fentanyl was the cause of Michelle's death; and (3) the drugs he sold were the proximate cause of Michelle's death. For the reasons discussed below, we disagree.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "Upon defendant's motion for dismissal, the question for the [trial c]ourt is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)). Evidence is considered "substantial" if it would be relevant and "necessary to persuade a rational juror to accept a conclusion." *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002). Finally, "in ruling on a motion to dismiss[,] the trial court is to consider the evidence in the light most favorable to the State." *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 652 (1982).

In our present case, Defendant was charged with the unlawful, willful, and felonious sale of fentanyl, the ingestion of which caused the death of Michelle. Under North Carolina's Death by Distribution statute, a person may be found guilty if all of the following requirements are met:

> (1) the person unlawfully sells at least one certain controlled substance; (2) the ingestion of the certain controlled substance or substances causes the death of the user; (3) the commission of the offense in subdivision (1) of this subsection was the proximate cause of the victim's death; and (4) the person did not act with malice.

N.C. Gen. Stat. § 14-18.4(b) (2021). Under our *de novo* standard of review, we now consider each of Defendant's three arguments regarding why the trial court erred in denying his motion to dismiss, construing all the evidence in the light most favorable to the State.

First, Defendant contends the State failed to present substantial evidence that he sold fentanyl to Kayla, rather than heroin. Specifically, Defendant argues that "[t]he State assumed from the absence of heroin in [Michelle's] blood on [26 March] that what she purchased on [25 March] was fentanyl." In essence, Defendant argues that assumptions cannot be substantial evidence. What Defendant describes as an assumption, however, can more appropriately be called circumstantial evidence—evidence which "may withstand a motion to dismiss and support a conviction when [it] does not rule out every hypothesis of innocence." *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988). "Circumstantial evidence is proof of a chain of facts

and circumstances" and need only give rise to a reasonable inference of guilt in order for it to be admitted to the jury. *State v. Wilkie*, 289 N.C. App. 101, 103, 887 S.E.2d 485, 486 (2023) (citing *State v. Lee*, 213 N.C. App. 392, 396, 713 S.E.2d 174, 177 (2011)). As long as the record contains actual evidence, either direct or circumstantial, that supports a reasonable inference of the defendant's guilt, a motion to dismiss should be denied. *State v. Golder*, 374 N.C. 238, 250, 839 S.E.2d 782, 790 (2020) (clarifying that substantial evidence may be justified by direct or circumstantial evidence).

Here, the uncontroverted facts in the Record show that: Kayla requested Defendant sell her one gram of heroin and one gram crack cocaine, to be split between Kayla and Michelle; Michelle ingested the drugs sold by Defendant; Michelle was found dead the following morning; and the only drugs found in Michelle's toxicology report were cocaine and fentanyl. Viewed in the light most favorable to the State, this evidence, while circumstantial, could be enough to "persuade a rational juror to accept a conclusion" that the substance sold by Defendant was fentanyl, not heroin. *See Mann*, 355 N.C. at 301, 560 S.E.2d at 781.

Next, Defendant argues there was not substantial evidence that fentanyl was, in fact, the cause of Michelle's death. The Record confirms Michelle had both cocaine and fentanyl in her system. Likewise, the Record shows that Dr. Privette stated Michelle had enough cocaine in her system to be lethal on its own. Those two facts, however, are dwarfed by the overwhelming direct evidence from both medical experts

and the conditions observed by law enforcement responding to the scene of Michelle's death: the tourniquet around Michelle's arm; the needles in Michelle's room; the four empty baggies; the toxicology report; and the autopsy revealing lethal amounts of both cocaine and fentanyl in Michelle's system.

While the evidence does not foreclose the possibility that fentanyl may not have been the sole cause of Michelle's death, there is ample evidence to support a conclusion that it was, in fact, fentanyl that killed Michelle. When this evidence is viewed in the light most favorable to the State, we hold it is enough to survive a motion to dismiss. *See Golder*, 374 N.C. at 250, 839 S.E.2d at 790.

Finally, Defendant argues the State failed to present substantial evidence of the element of proximate cause, which is required under the Death by Distribution statute. Defendant posits that Michelle's decision to consume, at once, all of the drugs she had purchased, broke the causal chain because Defendant could not have reasonably foreseen Michelle would do such a thing.

> Foreseeability is an essential element of proximate cause. This does not mean that the defendant must have foreseen the injury in the exact form in which it occurred, but that, in the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected.

*State v. Powell*, 336 N.C. 762, 771–72, 446 S.E.2d 26, 31 (1994) (quoting *Williams v. Boulerice*, 268 N.C. 62, 68, 149 S.E.2d 590, 594 (1966)) (internal citations omitted).

"[T]he question of whether [a] defendant's conduct was the proximate cause of death

is a question for the jury." *State v. Noble*, 226 N.C. App. 531, 535, 741 S.E.2d 473, 478 (2013) (quoting *State v. Bailey*, 184 N.C. App. 746, 749, 646 S.E.2d 837, 839 (2007)).

Here, Defendant's argument that Michelle's consumption of all the drugs she had purchased from him was not reasonably foreseeable is not only disingenuous, it misses the mark. To survive a motion to dismiss, the State must present the evidence "necessary to persuade a rational juror to accept a conclusion." *Mann*, 355 N.C. at 301, 560 S.E.2d at 781. Our *de novo* review of the Record reveals evidence that Michelle had obtained drugs sold by Defendant, Michelle had ingested drugs sold by Defendant, and Defendant knew the drugs he was selling to Kayla were to be shared between Kayla and Michelle. This evidence is enough to survive a motion to dismiss and submit the question of proximate cause to the jury. *See Noble*, 226 N.C. App. at 535, 741 S.E.2d at 478.

Viewed in the light most favorable to the State, the evidence in the Record was enough to persuade a rational juror that Defendant might not be innocent of the crime charged. Because the evidence presented did not "rule out every hypothesis of innocence," we hold the trial court did not err when it denied Defendant's motion to dismiss. *Stone*, 323 N.C. at 452, 373 S.E.2d at 433; *see Mann*, 355 N.C. at 301, 560 S.E.2d at 781.

**B. Rule 404(b)**

Finally, Defendant argues the trial court committed a prejudicial error when it allowed testimonial evidence that he sold drugs on prior occasions. Specifically, Defendant argues the prior sales to Kayla were not sufficiently similar to show intent, identity, and a common plan or scheme. We disagree.

Whether Rule 404(b) evidence was improperly admitted is a question of law reviewed *de novo*. *State v. Beckelheimer*, 366 N.C. 127, 130, 726 S.E.2d 156, 159 (2012). This Court reviews whether Rule 404(b) evidence should have nonetheless been excluded under Rule 403 for abuse of discretion. *State v. Al-Bayyinah*, 359 N.C. 741, 747, 616 S.E.2d 500, 506 (2005). An error is prejudicial and requires a new trial if "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443 (2021).

Under Rule 404(b), evidence of a defendant's other crimes, wrongs, or acts, may be admissible as proof of intent, identity, or a common scheme or plan. N.C. Gen. Stat. § 8C-404(b) (2021). Generally, Rule 404(b) is considered a rule of inclusion. *See State v. Coffey*, 326 N.C. 268, 278, 389 S.E.2d 48, 54 (1990). This evidence, however, is barred "if its probative value is substantially outweighed by the danger of unfair prejudice." N.C. Gen. Stat. § 8C-403 (2021). In reviewing a trial court's determination under Rule 403, this Court will overturn the trial court only if the trial court's ruling was "so arbitrary that it could not have been the result of a reasoned

- 11 -

decision." *State v. Thomas*, 268 N.C. App. 121, 135, 834 S.E.2d 654, 665 (2019) (quoting *State v. Hagans*, 177 N.C. App. 17, 23, 628 S.E.2d 776, 781 (2006)).

"In drug cases, evidence of other drug violations is often admissible to prove many of the purposes under Rule 404(b)." *State v. Williams*, 156 N.C. 661, 663–64, 577 S.E.2d 143, 145 (2003). In order to show intent or motive, evidence of the prior act must "'pertain to the chain of events explaining the context, motive, and set-up of the crime' and 'form an integral and natural part of an account of the crime . . . necessary to complete the story of the crime for the jury.'" *State v. White*, 349 N.C. 535, 552, 508 S.E.2d 253, 264 (1998) (quoting *State v. Agee,* 326 N.C. 542, 548, 391 S.E.2d 171, 174-75 (1990)). Additionally, "temporal and geographic proximity" as well as the aid of an accomplice are factors that may tend to show both identity and a common plan or scheme under Rule 404(b). *Thomas*, 268 N.C. App. at 135, 834 S.E.2d at 664–65.

Here, our *de novo* review of the Record reveals the trial court engaged in a lengthy analysis regarding the admissibility of Kayla's testimony regarding prior drug sales involving Defendant. Testimony about previous transactions in which Defendant sold drugs to Kayla and Michelle demonstrates not only the common plan or scheme of Defendant's drug sales, but also his intent when transacting with Kayla on 25 March 2020. *See White*, 349 N.C. at 552, 508 S.E.2d at 264. Additionally, Kayla's testimony that she put individuals in contact with Defendant for the purpose

of buying drugs from him is evidence that tends to confirm Defendant's identity. *See Thomas*, 268 N.C. App. at 135, 834 S.E.2d at 664–65.

Given the propriety of the testimonial evidence under Rule 404(b), the trial court did not err when it allowed the inclusion of Kayla's testimony. *See* N.C. Gen. Stat. § 15A-1443. Further, considering the copious amount of evidence showing Defendant sold drugs to Kayla and Michelle, it cannot be said that the probative value of Kayla's testimony showing Defendant's intent, common plan or scheme, and identity was outweighed by a danger of unfair prejudice. *See* N.C.R. Evid. 403. For those reasons, we hold the trial court neither abused its discretion nor committed a prejudicial error when it allowed Kayla's testimony regarding prior drug sales involving Defendant.

## IV. <u>Conclusion</u>

For the aforementioned reasons, we hold the trial court did not err when it denied Defendant's motion to dismiss; further, the trial court did not commit prejudicial error when it allowed evidence of his prior drug sales under Rule 404(b).

NO ERROR.

Judges CARPENTER and GORE concur.