IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-965-2

Filed: 3 March 2020

Wake County, Nos. 14 CRS 209763 and 14 CRS 209764

STATE OF NORTH CAROLINA

v.

MARDI JEAN DITENHAFER

Appeal by Defendant from judgments entered 1 June 2015 by Judge Paul G. Gessner in Superior Court, Wake County. Heard in the Court of Appeals 15 May 2017. By opinion issued 20 March 2018, a divided panel of this Court affirmed in part and reversed in part the judgments of the trial court. The State filed a petition for discretionary review with the Supreme Court of North Carolina. After granting review, by opinion dated 1 November 2019, the Court affirmed in part and reversed in part the Court of Appeals' decision and remanded to the Court of Appeals with directions.

*Attorney General Joshua H. Stein, by Assistant Attorney General Sherri Horner Lawrence, for the State.*

*Jarvis John Edgerton, IV, for Defendant.*

McGEE, Chief Judge.

Mardi Jean Ditenhafer ("Defendant") was convicted of two counts of felony obstruction of justice and one count of felony accessory after the fact to sexual activity

by a substitute parent. In an opinion issued 20 March 2018, this Court held the trial court did not err in denying Defendant's motion to dismiss the charge of felony obstruction of justice by pressuring the daughter to recant; however, the trial court did err in dismissing: (1) the charge of obstruction of justice based on denying investigators access to the daughter, and (2) the charge of being an accessory after the fact for her failure to report a crime. *State v. Ditenhafer*, ___ N.C. App. ___, 812 S.E.2d 896, *review on additional issues allowed*, ___ N.C. ___, 818 S.E.2d 107 (2018), *and aff'd in part, rev'd in part and remanded*, ___ N.C. ___, 834 S.E.2d 392 (2019). Because we held there was insufficient evidence to support Defendant's conviction for obstruction of justice based on Defendant's actions in denying investigators access to her daughter, we did not address whether there was sufficient evidence to enhance the charge from a misdemeanor to a felony under N.C.G.S. § 14-3(b). *Id.* at ___, 812 S.E.2d at 905.

In an opinion filed 1 November 2019, the North Carolina Supreme Court affirmed this Court's decision to the extent it held the trial court erred by denying Defendant's motion to dismiss the charge of accessory after the fact to sexual activity by a substitute parent but reversed this Court's holding that the trial court erred by denying Defendant's motion to dismiss the charge of obstruction of justice based on denying investigators access to the daughter. *State v. Ditenhafer*, ___ N.C. ___, ___, 834 S.E.2d 392, 401 (2019). The Supreme Court has instructed this Court, on

remand, to determine whether there was sufficient evidence presented "to enhance the charge of obstruction of justice for denying access to [the daughter] from a misdemeanor to a felony under N.C.G.S. § 14-3(b)." We are therefore tasked with determining whether there was substantial evidence that Defendant acted with deceit and the intent to defraud when she obstructed justice by denying law enforcement access to the daughter. *See* N.C.G.S. § 14-3(b) (2017) ("If a misdemeanor offense as to which no specific punishment is prescribed be . . . done . . . with deceit and intent to defraud, the offender shall . . . be guilty of a Class H felony."). We hold that the evidence, viewed in the light most favorable to the State, supports a reasonable inference that Defendant acted with deceit and the intent to defraud necessary to commit felony common law obstruction of justice in denying access to the daughter.

Factual and Procedural History

A full recitation of the underlying factual and procedural history of this case can be found in the Supreme Court's decision in *Ditenhafer*, ___ N.C. ___, 834 S.E.2d 392. A brief discussion of facts pertinent to our decision follows: The State's evidence tended to show that Defendant and her husband, William Ditenhafer ("William") had two children. Their daughter ("the daughter") was Defendant's biological child and William's adopted child and their son ("the son") was the biological child of both Defendant and William. When the daughter was approximately fifteen years old,

William began giving the daughter full-body massages to "help [her] self-esteem," with Defendant's knowledge. One night, after massaging the daughter, William instructed the daughter to discard her towel and sit next to him; he then guided her hand along his penis until he ejaculated. After weeks of similar behavior, William began to force the daughter to perform oral sex on him. Following the daughter's sixteenth birthday, William engaged in vaginal intercourse with her on several occasions.

While visiting her relatives in Arizona in the Spring of 2012, the daughter told her paternal aunt that she was being sexually abused by William. The daughter's aunt promptly reported the abuse to Arizona law enforcement and to Defendant. The daughter returned to North Carolina but, on the way home from the airport, Defendant told the daughter she did not believe her and that she needed to recant her allegations of abuse.

As part of the investigation, Defendant and the daughter met with Susan Dekarske ("Ms. Dekarske"), a social worker with the Wake County Child Protective Services ("CPS"), and Detective Stan Doremus ("Detective Doremus") with the Wake County Sheriff's Department ("WCSD") on 11 April 2013 at Defendant's home. Over the following months, the daughter met with Ms. Dekarske several times, with Defendant present or "in listening distance." Ms. Dekarske testified that "[f]or the majority part of the investigation, [the daughter] continued to inform me that

[Defendant] was pressuring her to recant the story." The daughter's therapist testified that "[the daughter] said that [Defendant] asked her to lie to me, to CPS, to the detectives, that her mother did not believe her and wanted her to recant because [the abuse] didn't happen."

During a meeting with Defendant, the daughter, Ms. Dekarske, and Detective Doremus on 21 June 2013, Defendant was seated "[s]houlder to shoulder" with the daughter, and "had her hand on [the daughter's] thigh virtually the whole time[.]" Detective Doremus testified that, when the daughter was asked questions, "Defendant was answering the questions for [the daughter]. The questions that were being asked of her, as soon as [the daughter] opened her mouth to talk, [D]efendant would answer the questions." During the interview, Defendant told Detective Doremus that "there is some truth to everything that [the daughter] says but not all of it is true" and told Ms. Dekarske that "she believes [the daughter] in regards to what she had disclosed; however, she still did not believe it was William who did that to her." Defendant told Detective Doremus that she would not permit the daughter to speak with him alone and, when Detective Doremus informed her that she could not prohibit such a meeting, Defendant reiterated that she was not going to authorize the daughter to meet with Detective Doremus one-on-one.

In the car on the way to meet with Ms. Dekarske and Detective Doremus at CPS's office on 11 July 2013, the daughter told Defendant that, because she could no

longer handle the pressure of Defendant's constant scolding her about her report of sexual abuse, she would recant her story. Defendant coached the daughter and told her what she should say. As a result of the daughter's promise to recant, Defendant allowed the daughter to meet with Ms. Dekarske and Detective Doremus alone.

Defendant sent text messages to her daughter throughout the course of the interview demanding information about what was being said and how long the interview would take. Detective Doremus testified that Defendant's conduct on 11 July 2013, including her sending text messages to the daughter, "moved [him] into investigator mode" because he "knew [he] probably had a limited amount of time to talk to [the daughter] before her mom pulled her out of that meeting[.]" Indeed, Defendant eventually did exactly that, cutting short Detective Doremus's opportunity to question the daughter about documentary evidence of the abuse. Detective Doremus testified that Defendant interrupted the interview and sat down at the table with a smirk; when he informed Defendant that the daughter had not recanted, Defendant's expression changed, and she grew angry. Defendant then ended the interview.

A few weeks later, on 5 August 2013, Ms. Dekarske met with the daughter and Defendant at Defendant's home. As Ms. Dekarske was pulling out of the driveway to leave, the daughter approached her car window and told her that she had made up everything. The daughter delivered the recantation in a "very robotic [manner],

saying something that [had] been rehearsed for her to say" and Ms. Dekarske observed Defendant watching the exchange from a window. Two days later, on 7 August 2013, the daughter contacted Detective Doremus by phone and recanted her report of abuse. During the call, Detective Doremus heard another person on the line besides himself and the daughter. The daughter later e-mailed a recantation to Detective Doremus, with Defendant "prompt[ing] [the daughter] on what to write, and [the daughter] typ[ing] it up in [her] e-mail."

Detective Doremus went to the daughter's school on 29 August 2013 and the daughter told him, "I'm not supposed to talk to you." Detective Doremus assured the daughter that he was not going to ask her any questions and informed her that the investigation into her report of abuse was ending as a result of the recantation and her being "in a home where [she was] not being supported[.]" The daughter testified that, during this time, she never wanted to recant her story and, if she had not been pressured by Defendant, she never would have recanted. Defendant's husband William, who had moved out of the family home when the investigation began, returned when the investigation was closed.

On 5 February 2014, William again demanded sex from the daughter. While William and the daughter were engaged in intercourse, Defendant entered the bedroom and witnessed the abuse. Later that day, Defendant instructed the daughter to accompany her to a McDonald's parking lot, where she was supposed to

meet Detective Doremus to pick up a cell phone that had been searched in the earlier investigation. Defendant parked in the parking lot and the daughter told her everything she had reported in the investigation was true, to which Defendant replied, "I'm not sure if I believe you or not, but I just – I need to handle this first." Defendant exited the car and retrieved the phone from Detective Doremus. Defendant did not allow the daughter to get out of the car to speak with Detective Doremus. Having witnessed firsthand William's abuse of her daughter, Defendant failed to report it in a face-to-face meeting with law enforcement hours later. Defendant then instructed the daughter to not tell anyone about the abuse "[b]ecause it was family business." Defendant specifically instructed the daughter to not talk to social workers or law enforcement.

Defendant called her brother-in-law on 19 March 2014 and told him she had witnessed William's abuse of the daughter. Defendant assured her brother-in-law that the daughter and William were going to therapy together, and that she "was doing everything correctly and . . . to not involve anyone else or the authorities because that would cost . . . more money and time."

Defendant's brother-in-law sent an email to CPS to report William's abuse of the daughter on or around 28 April 2014. Defendant called her brother-in-law, was "very angry" with him, accused him of reporting the abuse to CPS, and told him that the investigation "was a nightmare." After receiving the report from Defendant's

brother-in-law, a CPS assessor, Robin Seymore ("Ms. Seymore"), met the daughter at her school. The daughter immediately asked Ms. Seymore if Defendant was aware that Ms. Seymore was speaking with the daughter. When Ms. Seymore informed the daughter that Defendant did not know, the daughter said, "[c]an I go out and talk to my mom? I want to call my mom first."

The daughter attempted to call Defendant; however, she only reached her voicemail. The daughter told Ms. Seymore she "didn't really want to talk about it" and denied the abuse "[b]ecause it's what [she] was told to do by [Defendant]." Ms. Seymore described the daughter's demeanor as "very anxious . . . she kept saying, 'I want to call my mom. I need to talk to my mom.'" The daughter eventually got in touch with Defendant and Defendant picked the daughter up from school. They then traveled to the son's school, where Defendant burst into the room where Ms. Seymore was interviewing the son and said, "[a]bsolutely not. You're not going to talk to him. You are not going to talk to him. This is not happening."

Two days later, on 30 April 2014, Defendant agreed to speak to CPS at her home. Defendant refused to allow Ms. Seymore inside her home and insisted, despite heavy rain, wind, and forecasted thunderstorms, the interview take place outside in the downpour. Defendant informed Ms. Seymore that she was separated from William and that he was no longer allowed in the house "to avoid any more lies from [the daughter]." Defendant did not tell Ms. Seymore she had witnessed William's

abuse of the daughter.  Defendant instructed Ms. Seymore that CPS and its agents were not permitted to speak to her children at school unless a parent or attorney was present, and that the only place she would authorize contact would be outside of her house.

Warrants for Defendant's arrest were issued on 1 May 2014 for felony obstruction of justice and felony accessory after the fact to William's abuse of the daughter.  On the same day, Detective Doremus accompanied other law enforcement officers and CPS's representative to Defendant's house for the purpose of removing the daughter from the home and arresting Defendant.  Detective Deremus observed Defendant drive towards her home with the daughter and the son in her car; however, upon seeing the law enforcement officers, Defendant turned around in a driveway and drove off in the other direction.  Detective Doremus and another investigator activated their blue lights and followed Defendant's car, stopping it before it exited the subdivision.  Detective Doremus and a CPS worker approached Defendant's car, but she rolled up her car windows and locked the doors.  At that point, Defendant told the daughter, "[d]on't say anything.  Don't get out of the car. . . . If they try and take you away . . . don't go. Refuse to go. You know, lower your arm. Run down the street. Just don't go."  Defendant finally exited the car and Detective Doremus allowed her to drive her children back to her home.  Upon returning home, the daughter was

instructed to collect her belongings; however, Defendant took the daughter's laptop and phone and would not allow her to take them with her.

Analysis

The North Carolina Supreme Court held there was sufficient evidence presented at the trial to support Defendant's conviction for obstruction of justice based on Defendant denying access to the daughter and, accordingly, held the trial court did not err in denying Defendant's motion to dismiss. *Ditenhafer*, ___ N.C. at ___, 834 S.E.2d at 401. The elements of felony obstruction of justice are: (1) unlawfully and willfully (2) acting to prevent, obstruct, impede, or hinder justice (3) in secret and with malice or with deceit and intent to defraud. *See, e.g., State v. Cousin*, 233 N.C. App. 523, 531, 757 S.E.2d 332, 339 (2014)[1] (holding no error in denying a motion to dismiss a charge of felony obstruction of justice where there was sufficient evidence the defendant "(1) unlawfully and willfully (2) obstructed justice by providing false statements to law enforcement officers investigating [a crime] (3) with deceit and intent to defraud"). If the State introduces substantial evidence of the third element demonstrating deceit and intent to defraud, the obstruction charge may be elevated from a misdemeanor to a felony. *See* N.C.G.S. § 14-3(b).

---

[1] The dissent would read *Cousin*, 233 N.C. App. 523, 757 S.E.2d 332, to hold that absent evidence of a substantial burden imposed on investigators, Defendant's illegal acts were not done with deceit and the intent to defraud. However, *Cousin* imposes no such requirement on the State. *Id.* at 531, 757 S.E.2d at 339. Instead, *Cousin* simply held that such evidence, like other circumstantial evidence of intent, supported a felony obstruction of justice charge. *Id.*

Our Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980). Such substantial evidence may be "direct, circumstantial, or both[,]" *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988), and we consider it "in the light most favorable to the State with every reasonable inference drawn in the State's favor." *Cousin*, 233 N.C. App. at 529–30, 757 S.E.2d at 338 (citation omitted).

The dissent asserts "the majority's opinion cannot draw a legally culpable distinction or definition between solely obstructing access as is alleged in the indictment and condemning Defendant with felonious 'deceit and intent to defraud.'" The Supreme Court explicitly held that the State presented sufficient evidence that Defendant did, in fact, obstruct justice by denying officers and social workers access to the daughter throughout their investigation. *Ditenhafer*, ___ N.C. at ___, 834 S.E.2d at 401. The *only* question before this Court is whether there is sufficient evidence of deceit and the intent to defraud to elevate the charge of obstruction of justice from a misdemeanor to a felony. To the extent the dissent points to facts demonstrating Defendant did not obstruct justice by denying access to the daughter, we are bound by the law of the case. *See Weston v. Carolina Medicorp, Inc.*, 113 N.C. App. 415, 417, 438 S.E.2d 751, 753 (1994) ("According to the doctrine of the law of the case, once an appellate court has ruled on a question, that decision becomes the law

of the case and governs the question both in subsequent proceedings in a trial court and on subsequent appeal." (citation omitted)).

Defendant's argument on appeal that she was acting in service of the truth is entirely inconsistent with the evidence discussed below. The record demonstrates that the State introduced evidence, taken in the light most favorable to it, that Defendant acted with deceit and the intent to defraud. For example, the State's evidence showed Defendant believed the daughter had been abused by someone. Defendant told Ms. Dekarske "she believe[d the daughter] in regards to what she had disclosed; however, she still did not believe it was William who did that to her" and told Detective Doremus that "there is some truth to everything that [the daughter] sa[id] but not all of it is true." Despite believing abuse had occurred, Defendant took steps to frustrate attempts by law enforcement and social workers to investigate that abuse. Defendant remained within hearing distance or was present in almost every interview with CPS and WCSD, did not permit her daughter to answer questions and answered for her in one interview, sent text messages and physically interrupted another interview, and sought to constantly influence her daughter's statements in those interviews by verbally abusing and punishing the daughter for the statements she was making. Defendant also instructed the daughter not to speak with investigators and directed investigators not to speak with the daughter in private,

ensuring that the daughter did not have the opportunity to give investigators truthful statements regarding the abuse.

Evidence of Defendant's intent goes beyond her efforts to intervene in the investigation. Defendant controlled the narrative by coaching the daughter on what to say, listening on the line when the daughter recanted her story to Detective Doremus, and "prompt[ing the daughter] on what to write" in the email in which the daughter recanted her story. Notably, Defendant did not merely encourage the daughter to tell the truth as Defendant believed it; she specifically pressured the daughter to *lie*. The daughter's therapist testified that "[the daughter] said that [Defendant] asked her to lie to me, to CPS, to the detectives, that her mother did not believe her and wanted her to recant because [the abuse] didn't happen." Thus, the evidence of Defendant's conduct surrounding and during the interviews with investigators was sufficient to allow a reasonable juror to infer that her denial of access was committed with deceit and intent to defraud.

The State also introduced evidence of Defendant's actions *after* she witnessed the abuse firsthand demonstrating she acted with deceit and the intent to defraud during the time period alleged in the indictment. After catching William in the act of raping her daughter, she instructed the daughter to not tell anyone about the abuse "[b]ecause it was family business" and specifically directed the daughter to not talk to social workers or law enforcement. Subsequently, when Ms. Seymore met with the

daughter at her school, the daughter was "very anxious," insisted on calling her mom, and denied the abuse "[b]ecause it's what [she] was told to do by [Defendant]." Defendant finally agreed to meet Ms. Seymore at her house; however, she insisted the interview take place outside in a rainstorm. Defendant instructed Ms. Seymore that CPS and its agents were not permitted to speak to her children alone at school and she would only authorize contact outside, but not inside, of her house. A few days later, upon realizing officers were at her home to arrest her, Defendant instructed the daughter, "[d]on't say anything. Don't get out of the car." This evidence of Defendant's actions after witnessing the abuse firsthand was sufficient to allow a reasonable juror to infer that, between 11 July and 1 September 2013, Defendant acted with deceit and the intent to defraud by denying investigators access to the daughter.

The dissent asserts that "[t]he only relevant evidence to elevate the obstruction of access to a felony must have occurred between the alleged dates of between 11 July to 1 September 2013" and "[t]he lengthy recitation of facts in the majority's opinion regarding Defendant's actions that led to her daughter's recanting allegations are outside of the time frame and dates alleged in the indictment before us and are also not before us on remand." Evidence regarding Defendant's actions after 1 September 2013 provides circumstantial evidence of her deceit and intent to defraud during the relevant period. *State v. Smith*, 211 N.C. 93, 95, 189 S.E. 175, 176 (1937) ("Intent

being a mental attitude, it must ordinarily be proven, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be inferred."). Moreover, the Supreme Court considered evidence of Defendant's actions *after* 1 September 2013 in holding that there was sufficient evidence supporting Defendant's conviction for obstruction of justice based upon Defendant's actions in denying access to the daughter. *Ditenhafer*, ___ N.C. at ___, 834 S.E.2d at 400–01.

We also reject the dissent's argument that there is no independent evidence to prove Defendant acted with deceit and the intent to defraud in denying access to the daughter. To the extent the dissent makes a double jeopardy argument by asserting the same evidence cannot be used to support both the charge of felony obstruction of justice by denying access to the daughter and felony obstruction of justice for encouraging the daughter to recant, Defendant has not made this argument on appeal. *State v. Collington*, ___ N.C. App. ___, ___, 814 S.E.2d 874, 883–84 (2018) ("Where a defendant's appellate counsel fails to raise an argument on appeal, that argument is deemed abandoned, as it is not the job of this Court to make a defendant's argument for him." (internal quotation marks, citation, and brackets omitted)). This Court has recognized that:

> even where evidence to support two or more offenses
> overlaps, double jeopardy does not occur unless the
> evidence required to support the two convictions is
> identical. If proof of an additional fact is required for each

- 16 -

conviction which is not required for the other, even though some of the same acts must be proved in the trial of each, the offenses are not the same.

*State v. Murray*, 310 N.C. 541, 548, 313 S.E.2d 523, 529 (1984), *overruled on other grounds by State v. White*, 322 N.C. 506, 369 S.E.2d 813 (1988). The facts alleged in the indictment alleging obstruction of justice for pressuring the daughter to recant are different than the facts alleged in the indictment alleging obstruction of justice for denying access to the daughter. As proof of an additional fact is required for each obstruction charge, double jeopardy does not apply. *See id.*

Finally, the inferences the dissent draws from the evidence presented at trial are contrary to our standard of review. *See State v. Morris*, 102 N.C. App. 541, 544, 402 S.E.2d 845, 847 (1991) ("When the trial court is ruling on a defendant's motion to dismiss, the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference which can be drawn from the evidence presented; all contradictions and discrepancies are resolved in the State's favor."). First, the dissent asserts that Defendant's instructions to investigators to not meet with the daughter alone "does not show she acted with deceit and intent to defraud to deny access within the specific dates alleged in the indictment." This inference is clearly drawn in favor of Defendant. The same is true of the dissent's contention that "[t]he detective's assertion that he could meet and speak with the daughter without seeking an order or warrant tends to show these multiple charges

were duplicative and in response to Defendant-mother's demand for the investigators to follow the law and obey the Constitution, if they desired additional unrestricted access to this minor female." Such a conclusion is plainly prohibited by our standard of review; further, this Court will not presume that prosecutors acted in bad faith, certainly short of any evidence in this regard.

<u>Conclusion</u>

Viewing all the evidence in the light most favorable to the State and giving it the benefit of every reasonable inference drawn therefrom, as we are required to do, we conclude that it was sufficient to allow a reasonable inference that Defendant acted with deceit and the intent to defraud necessary to commit felony common law obstruction of justice in denying access to the daughter.

NO ERROR.

Judge INMAN concurs.

Judge TYSON dissents.

No. COA16-965-2 – *State v. Ditenhafer*

TYSON, Judge, dissenting.

Upon remand from the Supreme Court, this Court is directed to determine "whether there is sufficient evidence to enhance the charge of obstruction of justice for denying access to [the daughter] from a misdemeanor to a felony pursuant to N.C.G.S. § 14-3(b)." *State v. Ditenhafer*, ___ N.C. ___, ___, 834 S.E.2d 392, 401 (2019). This statute provides: "If a misdemeanor offense as to which no specific punishment is prescribed be infamous, done in secrecy and malice, or with deceit and intent to defraud, the offender shall, except where the offense is a conspiracy to commit a misdemeanor, be guilty of a Class H felony." N.C. Gen. Stat. § 14-3(b) (2019).

To elevate misdemeanor obstruction of justice for denial of access to a felony, the statute requires the State to additionally prove Defendant's obstruction was committed "with deceit and intent to defraud." *Id.* The Supreme Court held the State's evidence is sufficient to overcome Defendant's motion to dismiss and submit obstruction of justice based upon denial of access to the jury. *Ditenhafer*, ___ N.C. at ___, 834 S.E.2d at 401.

I do not, and cannot, minimize the trauma and abuse this young woman experienced by her stepfather, William. He pled guilty to six rape, assault, and abuse crimes and is serving long prison sentences for his crimes. His acts and crimes are not before us here. The repeated recitation of his crimes in the majority's opinion has no relevance to the issue our Supreme Court tasked this Court on remand.

The lengthy recitation of facts in the majority's opinion regarding Defendant's actions that led to her daughter's recanting allegations are outside of the time frame and dates alleged in the indictment before us and are also not before us on remand. Defendant stands convicted for her felonious actions underlying that separate obstruction crime.

The majority's opinion agrees with the State's assertion Defendant is subject to additional felony criminal liability for obstructing justice, because she failed to provide law enforcement with access to her daughter throughout the course of the investigation, and she additionally acted feloniously with deceit and intent to defraud. N.C. Gen. Stat. § 14-3(b). This conclusion is not what the indictment alleges nor what the State's evidence shows.

The only relevant evidence to elevate the obstruction of access to a felony must have occurred between the alleged dates of between 11 July to 1 September 2013. After reciting the repetitive, inflammatory, and extraneous facts, the majority's opinion cannot draw a legally culpable distinction or definition between solely obstructing access as is alleged in the indictment and condemning Defendant with felonious "deceit and intent to defraud." The evidence shows Defendant presented her daughter and allowed access every time upon request. This fact negates "deceit and intent to defraud." Such evidence is not argued to be "deceit and intent to

defraud" nor so proven by the State. I respectfully dissent from the majority's opinion.

## I. Analysis

Defendant is under no legal obligation to: (1) voluntarily provide *any* access to her minor daughter; (2) allow investigators into her home without an order or warrant; (3) voluntarily transport her minor daughter to and from the repeated interviews and sessions; (4) sit silently or be excluded without an order or warrant, while her minor daughter was interrogated, examined, and probed by strangers concerning the most intimate aspects and details of the assaults and rapes by her stepfather.

Our Supreme Court has defined common law obstruction of justice as "any act which prevents, obstructs, impedes or hinders public or legal justice." *In re Kivett*, 309 N.C. 635, 670, 309 S.E.2d 442, 462 (1983) (citation omitted); *see also State v. Wright*, 206 N.C. App. 239, 241, 696 S.E.2d 832, 834-835 (2010). No credible evidence supports elevating the charge of obstruction of justice by Defendant purportedly acting with deceit and intent to defraud for the investigators' alleged lack of access to the daughter, when they did absolutely nothing legally required to gain that access in the absence of consent by her mother.

Merriam-Webster defines access, in part, as "permission, liberty, *or ability . . . to approach or communicate with a person*[.]" *Access*, MERRIAM-WEBSTER,

https://www.merriam-webster.com/dictionary/access (last visited Feb. 18, 2020) (emphasis supplied). The record clearly indicates, and the State acknowledges, Defendant provided both Detective Doremus of WCSD and Ms. Dekarske of CPS with repeated access and permission to interview her minor daughter to negate "deceit and intent to defraud."

Defendant voluntarily signed a safety agreement and required the stepfather to move out of the marital residence. Defendant also voluntarily transported her underage daughter to and from several interviews, and she allowed the daughter to be interviewed both at home and at the CPS office *each time* such access was requested.

The record is replete with evidence of such meetings taking place between April 2013, when the investigation opened, and August 2013. Even within the narrowed dates alleged within this specific indictment, 11 July to 1 September 2013, unchallenged and uncontested evidence shows Defendant voluntarily provided access to investigators to interview her minor daughter multiple times which negates Defendant acting with deceit and intent to defraud

During the specific time period alleged in the indictment, the record evidence shows at least three specific times when Defendant voluntarily allowed CPS investigators to interview the daughter: (1) an in-person meeting on 11 July; (2) an in-person meeting on 25 July; and, (3) an in-person meeting on 5 August. The WCSD

detective was also present at the 11 July interview. In addition, the daughter called the CPS investigator two additional times, on 22 July and 24 July, both within the dates alleged in the indictment.

In addition to these interviews, Defendant drove her daughter to and from, and the daughter consistently attended, CPS-requested therapy sessions; at least three of those sessions occurred within the date range specified in the indictment. These sessions continued through January 2014 and also negate that Defendant acted with "deceit and intent to defraud."

The majority's opinion points to the 11 July meeting with Detective Doremus and Ms. Dekarske as a specific example to show Defendant acted with deceit and intent to defraud to deny investigators access to her daughter. The record evidence shows Defendant voluntarily drove her daughter to the meeting and waited outside while the daughter went in and met alone with both the WCSD detective and the CPS investigator.

Any evidence concerning Defendant texting or "putting pressure" on her daughter *to recant*, which may support the other indictment and conviction for obstruction of justice, is simply not applicable for this separate charge of obstruction by denying "access" by Defendant feloniously acting with deceit and intent to defraud.

In support of her argument asserting the State did not prove deceit and intent, Defendant points to the undisputed fact that she told the detective that he could not

speak with her daughter without a third party in the room. She argues a requirement that a third party be present shows the opposite of any intention by her to deceive.

In *State v. Cousin*, this Court reviewed a defendant's assertion that the trial court had erred by denying his motions to dismiss the charges of felonious obstruction of justice and accessory after the fact based upon the insufficiency of the evidence. *State v. Cousin*, 233 N.C. App. 523, 529, 757 S.E.2d 332, 338 (2014). The defendant in *Cousin* argued there was no evidence his statements were intentionally false or misleading. *Id.* at 531, 757 S.E.2d at 339. This Court listed the eight written statements the defendant provided to law enforcement. *Id.* at 530, 757 S.E.2d at 338.

In two statements, the defendant in *Cousins* denied being at the murder scene but identified others who were present. *Id.* In the next four statements, the defendant admitted being present but identified various others as the perpetrator of the murder. *Id.* at 530-31, 757 S.E.2d at 339. A State Bureau of Investigation ("SBI") agent testified to the significant burden imposed on the investigation resulting from the conflicting statements.

The SBI eventually determined each person named by the defendant had an alibi. This Court held "when viewed in the light most favorable to the State, a jury question existed as to whether Defendant (1) unlawfully and willfully (2) obstructed justice by providing false statements to law enforcement officers investigating the death of [the victim] (3) with deceit and intent to defraud." *Id.* at 531, 757 S.E.2d at

339. This Court held the trial court had properly denied the defendant's motion to dismiss the felonious obstruction of justice charge. *Id.*

No testimony from the State shows a significant burden imposed upon the sheriff's department or CPS resulting from Defendant's denial of access to make her conduct felonious. No additional evidence shows Defendant's deceit and intent to defraud, other than the underlying actions the State used to prove the other obstruction charge to recant that is not before us.

The State must offer other substantial evidence of each element charged. *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *Id.*

Detective Doremus and Ms. Dekarske were able to interview the daughter alone for a period of time before Defendant ended the meeting. Defendant was clearly within her parental rights to terminate the interview without the investigators from WCSD and CPS possessing or seeking a noninterference order or a warrant. Defendant cooperated with CPS' request that her daughter begin therapy and selected a therapist for her daughter. She allowed investigators into her home without a warrant to interview her daughter and drove the daughter to and from requested meetings held in other locations.

If the investigators were inhibited by Defendant feloniously acting with deceit and intent to defraud to deny them access to interfere with their investigation, they were obligated to seek a warrant based upon probable cause or to petition the court for a noninterference order. U.S. Const. amend. IV; *see* N.C. Gen. Stat. § 7B-303(a) (2019) ("If any person obstructs or interferes with an assessment . . . the director may file a petition naming that person as respondent and requesting an order directing the respondent to cease the obstruction or interference.").

Detective Doremus also expressly told Defendant at the 21 June 2013 meeting that Defendant could not prohibit him from speaking with her daughter alone. If so, he should have applied for a warrant and demonstrated probable cause before a magistrate. The State, not Defendant, carries the burden to explain investigators' failures to either demonstrate probable cause for the warrant or petition for the order. Trying to draw a line to find Defendant obstructed justice by not providing access, while feloniously acting with deceit and intent to defraud, creates arbitrary and unworkable distinctions in our jurisprudence and is error.

The State's evidence does not support the elements and allegations in this indictment of Defendant acting with deceit and intent to defraud to elevate the obstruction of access from a misdemeanor to a felony. Neither Defendant's presence at nor her ending of the investigators' discussions with her daughter, without investigators and detectives seeking a noninterference order or asserting probable

cause for a warrant, justifies elevating this charge of obstruction by failing to provide access from a misdemeanor to a felony. *See Wright*, 206 N.C. App. at 241, 696 S.E.2d at 834-35.

## II. Conclusion

We and the Supreme Court agreed that the State presented sufficient evidence to allow the jury to convict Defendant of felony obstruction of justice for her actions leading her daughter to recant her allegations. That same evidence cannot also be used to support the same elements of felony obstruction on lack of access within the dates alleged within this specific indictment, 11 July to 1 September 2013. No independent evidence proves Defendant-mother failed to deliver and present her minor daughter for all requested meetings and therapy sessions and wanted a third party present, while additionally acting with deceit and intent to defraud.

The State failed to present evidence of the elements of felony obstruction of justice by Defendant-mother allegedly acting with deceit and intent to defraud to restrict access of investigators from WCSD and CPS without them securing either a noninterference order or a warrant to gain unrestricted access to further interview her minor daughter alone. She is not obligated under threat of felony to do their jobs, make them easier, or be punished for making investigators follow the statutory procedures and obey the Constitution for a warrant.

Defendant told the investigator not to meet with her minor daughter without her consent or without a third party being present. This demand, as a mother of a minor daughter, she unquestionably had the right to assert and enforce without felonious criminal liability. Her asserting these parental rights does not show she acted with deceit and intent to defraud to deny access within the specific dates alleged in the indictment.

In contrast, during the specific time periods alleged in the indictment, the record clearly shows Defendant voluntarily transported her underage daughter three (3) times to and from interviews; she allowed the daughter to be interviewed both at home and at the CPS office *each time* such access to her was requested and drove her to therapy sessions three (3) times, with two (2) additional phone calls between the daughter and CPS. Defendant agreed to and signed a safety agreement and required the abusive stepfather to move out of the marital residence.

Our Supreme Court concluded the State presented evidence to support a misdemeanor obstruction charge on access to survive Defendant's motion to dismiss and support a conviction, but remanded and questioned whether the evidence is sufficient to prove a felony. It is not an obstruction with fraud or deceit to demand and compel governmental agents to comply with the statutes and Constitution, petition for and secure the statutory noninterference order, or to show probable cause to obtain a warrant from a magistrate.

These investigators did neither. Government agents should not be excused from their failure to do so and attempt to shift their failures onto Defendant, who possesses statutory and Constitutional rights as both a parent and an individual under the Fourth Amendment, through seeking felony criminal obstruction charges against her. U.S. Const. amend. IV; N.C. Gen. Stat. § 7B-303(a).

The detective's assertion that he could meet and speak with the daughter without seeking an order or warrant tends to show these multiple charges were duplicative and in response to Defendant-mother's demand for the investigators to follow the law and obey the Constitution, if they desired additional unrestricted access to her minor daughter.

This Court and our Supreme Court have both concluded some of these charges were so without merit to not survive Defendant's motion to dismiss. There is no evidence within the specific time period alleged in the indictment that Defendant acted to deny access with deceit and an intent to defraud to obstruct justice to elevate this charge from a misdemeanor to a felony. I respectfully dissent.