IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-997

Filed 16 July 2024

Pitt County, No. 21CRS055716

STATE OF NORTH CAROLINA

      v.

ROGER B. SMITH

Appeal by Defendant from judgment entered 26 January 2023 by Judge Marvin K. Blount, III, in Pitt County Superior Court. Heard in the Court of Appeals 11 June 2024.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Kerry M. Boehm, for the State-Appellee.*
>
> *Appellate Defender Glenn Gerding, by Assistant Public Defender Max E. Ashworth, III, for Defendant-Appellant.*

COLLINS, Judge.

Defendant Roger B. Smith appeals from judgment entered upon a guilty verdict of felony stalking. Defendant argues that the trial court erred by denying his motion to dismiss the charge of felony stalking because the State did not submit sufficient evidence that he harassed the alleged victim or, in the alternative, that there was insufficient evidence that Defendant knew or should have known that a reasonable person would have suffered substantial emotional distress after receiving unsolicited phone calls. We find no error.

## I. Background

Defendant was indicted in Pitt County Superior Court on 7 February 2022 for two counts of felony stalking. Prior to the start of trial, the State dismissed one count of felony stalking and Defendant proceeded to trial on the remaining count of felony stalking. Defendant admitted at trial that he had been previously convicted of misdemeanor stalking. The State's evidence presented at trial tended to show the following:

Iris McIntire[1] was a 75-year-old widow who lived alone in Greenville, North Carolina. McIntire was enrolled in classes at a local community college, and she was also an active member of her local church who consistently participated in weekday church services, Bible study, Sunday morning services, and Sunday night services. McIntire also participated in the church's daily prayer line which met over the phone each weekday morning from 6:00 a.m. to 7:30 a.m. Defendant was also a member of the same church and participated in the church's daily prayer line each weekday morning.

In the summer of 2021, Defendant approached McIntire after a weekday morning church service and asked for her phone number; McIntire shared her number with Defendant, thinking that he wanted to speak with her about her community college classes. When McIntire arrived back at her home following the

---

[1] We use a pseudonym to protect the identity of the victim.

church service, she discovered that Defendant had called multiple times and left seven voicemails on her answering machine stating that he liked her and asking her to have coffee with him and go out with him. McIntire deleted the voicemails. Later that evening, Defendant again called McIntire multiple times. The very next morning, after McIntire finished participating in the church's daily prayer line at 7:30 a.m., Defendant again began calling her repeatedly. McIntire would answer the phone, hear Defendant say her name and start talking to her, and hang up the phone. Defendant kept calling and, during one of the calls, Defendant asked McIntire out. McIntire told Defendant that she was not interested in him and to stop calling her. During one of the phone calls, Defendant told McIntire that he wanted to have sex with her and stated that God told him to ask her out and to take care of her. McIntire reiterated that she was not interested in Defendant and became so scared that she "didn't go to sleep all night long."

Defendant continued to call McIntire multiple times a day for a period of at least six months, and McIntire repeatedly told Defendant to stop contacting her and to leave her alone. During this six-month period, Defendant also began approaching McIntire in person while at church. McIntire went to her church's pastor and asked him to speak with Defendant and tell Defendant to stop calling her. McIntire also went to the local police and reported Defendant's conduct. Defendant continued to call her every day, "five or six times" a day, until the local police became involved and Defendant's phone calls stopped.

Following the close of the State's evidence, Defendant moved to dismiss the charge of felony stalking, arguing that the State had failed to present substantial evidence that Defendant's conduct would cause "a reasonable person to suffer substantial emotional distress." On 26 January 2023, the jury found Defendant guilty of one count of felony stalking, and Defendant was sentenced to a term of 19 to 32 months' imprisonment. Defendant filed proper notice of appeal on the same day.

## II.    Discussion

Defendant argues that "the trial court erred by denying [his] motion to dismiss the stalking count because the State did not submit substantial evidence of each element." Defendant specifically argues that there was insufficient evidence that (1) he harassed McIntire or (2) he knew or should have known a reasonable person would have suffered substantial emotional distress "after receiving unsolicited phone calls."

## A. Standard of Review

This Court reviews the trial court's denial of a motion to dismiss de novo. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "In ruling upon a motion to dismiss, the trial court is required to view the evidence in the light most favorable to the State, making all reasonable inferences from the evidence in favor of the State." *State v. Kemmerlin*, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002) (citation omitted). "[T]he trial court must determine whether there is substantial evidence of each essential element of the crime." *Id.* (quotation marks and citation omitted).

"Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002) (citation omitted). If substantial evidence exists that the charged offense was committed and that the defendant was the perpetrator of said offense, "the case is for the jury [to decide] and the motion to dismiss should be denied." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988) (citation omitted).

## B. Stalking

N.C. Gen. Stat. § 14-277.3A governs the crime of stalking and specifically sets forth the legislative intent of the statute, explaining that stalking

> involves severe intrusions on the victim's personal privacy and autonomy. It is a crime that causes a long-lasting impact on the victim's quality of life and creates risks to the security and safety of the victim and others, even in the absence of express threats of physical harm. Stalking conduct often becomes increasingly violent over time.
>
> The General Assembly recognizes the dangerous nature of stalking as well as the strong connections between stalking and domestic violence and between stalking and sexual assault. Therefore, the General Assembly enacts this law to encourage effective intervention by the criminal justice system before stalking escalates into behavior that has serious or lethal consequences. The General Assembly intends to enact a stalking statute that permits the criminal justice system to hold stalkers accountable *for a wide range of acts, communications, and conduct. . . .*

N.C. Gen. Stat. § 14-277.3A(a) (2023) (emphasis added). The statute provides that a defendant is guilty of stalking if the defendant

> willfully on more than one occasion harasses another person without legal purpose or willfully engages in a

course of conduct directed at a specific person without legal
purpose and the defendant knows or should know that the
harassment or the course of conduct would cause a
reasonable person to do any of the following:

> (1) Fear for the person's safety or the safety of the
> person's immediate family or close personal
> associates.

> (2) Suffer substantial emotional distress by placing
> that person in fear of death, bodily injury, or
> continued harassment.

*Id.* § 14-277.3A(c) (2023).  A person "who commits the offense of stalking after having

been previously convicted of a stalking offense is guilty of a Class F felony."  *Id.*

§ 14-277.3A(d) (2023).  Thus, the elements of the offense of felony stalking are that a

defendant: (1) acted willfully; (2) harassed another person or engaged in a course of

conduct; (3) without legal purpose on more than one occasion; (4) knew or should have

known that the course of conduct would cause a reasonable person to fear for his or

her safety or "suffer substantial emotional distress by placing that person in fear of

. . . continued harassment"; and (5) was previously convicted of a stalking offense.  *Id.*

§ 14-277.3A(c), (d).

Here, it is undisputed that the first, third, and fifth elements have been met:

Defendant willfully telephoned McIntire and approached her at church, such that the

first element is met; Defendant willfully contacted McIntire on more than one

occasion, such that the third element is met; and Defendant admitted that he had a

prior conviction for a separate stalking offense, such that the fifth element is met.

Defendant argues only that the second and fourth elements are not supported by

substantial evidence.

### *Element Two – Harassment*

The stalking statute defines "course of conduct" as "[t]wo or more acts . . . in which the stalker . . . by any action, method, device, or means, . . . communicates to or about a person[.]" *Id.* § 14-277.3A(b)(1) (2023). It defines "harasses or harassment" as "[k]nowing conduct, including . . . telephone, cellular, or other wireless telephonic communication, . . . directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose." *Id.* § 14-277.3A(b)(2) (2023). Our Court has further explained that the term torment, as applied to the stalking statute, is defined as conduct that "annoy[s], pester[s], or harass[es]." *State v. Wooten*, 206 N.C. App. 494, 498, 696 S.E.2d 570, 573 (2010) (citation omitted).

Here, the State presented substantial evidence that Defendant's conduct constituted harassment: Defendant telephoned McIntire multiple times a day, every day, for more than six months, despite McIntire's repeated demands that Defendant stop calling her and cease all communication. Defendant called McIntire and told her that "he wanted to have sex with [her,]" "really wanted [her] to be with [him,]" and "really needed [her]." Defendant further told McIntire that she "had to do something for him because he was dripping, leaking" and McIntire hung up on Defendant. McIntire told Defendant to stop calling her, that she was not interested in him, and that she did not want to have sex with him. She testified that Defendant "just didn't let up" and instead started calling her from other numbers, including blocked

numbers. All of McIntire's communications with Defendant were solely limited to her demanding that Defendant stop contacting her and asking Defendant to leave her alone. Defendant then repeatedly approached McIntire in person at church, despite her demands that he stop and her refusal to engage with him, resulting in McIntire asking her godson, her church's pastor, and the local police to intervene on her behalf to stop Defendant. This testimony is substantial evidence that Defendant's conduct constituted harassment that tormented and terrorized McIntire and served no legitimate purpose. *See* N.C. Gen. Stat. § 14-277.3A(b)(2).

### *Element Four – Substantial Emotional Distress*

The stalking statute requires that a defendant "knows or should know that the harassment or the course of conduct would cause a reasonable person" to "[f]ear for the person's safety . . . " or "[s]uffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment." *Id.* § 14-277.3A(c)(1), (2). The statute defines a reasonable person as a "reasonable person *in the victim's circumstances*" and it defines substantial emotional distress as "[s]ignificant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling." *Id.* § 14-277.3A(b)(3), (4) (emphasis added). Our Court has held that evidence that the victim significantly altered their lifestyle in response to the harassing conduct is evidence of substantial emotional distress. *See Bunting v. Bunting*, 266 N.C. App. 243, 253, 832 S.E.2d 183, 190 (2019) ("Plaintiff's testimony that Defendant's repeated contact caused her to feel

terror, to change her housing arrangements, and to alter her daily routine is sufficient evidence of substantial emotional distress." (citation omitted)).

Here, the State presented substantial evidence that Defendant's conduct resulted in McIntire suffering substantial emotional distress. McIntire testified that Defendant's repeated phone calls and in-person approaches caused her to break down and that she "started going to a psychiatrist because [she does not] go outside anymore." McIntire testified:

> It has affected me bad. I don't go to church like I used to.
> I don't go to school no more. . . . It affects me to this day. I
> just -- I'm scared to go out. I don't know where he is. And
> I don't want to get close to him. I don't know what he's
> going to do to me. . . . I couldn't take it no more. I wasn't
> sleeping at night. And when I get to school I would have
> an anxiety attack. I went to the doctor the same day and I
> broke down in Dr. Milton's office. And she asked me could
> she get me a psychiatrist? . . . I'm still seeking that help. . . .
> I don't go out at night. I only -- I haven't been on the prayer
> line, the morning prayer, or Tuesday night Bible Study on
> the phone. I just go to Bible Study Wednesday morning
> and it turns out at 11 and I'm home before 11:30. . . . I don't
> feel safe outside of my home no more. . . . I don't know
> where this man is going to be at. I really don't. And I don't
> trust him. I don't even trust people like I use to. I'm sorry.
> Every day by 4 o'clock I've got my alarm on, my blinds are
> closed, and everything that I'm going to drink or snack on
> that night is in my bedroom, and I don't come up front no
> more until the next morning.

This testimony is substantial evidence that Defendant's conduct caused McIntire to feel terror, to suffer emotional torment that prompted her to seek out medical and psychiatric care, and to change her daily habits and routine due to her fear of

continued harassment. This evidence supports that McIntire suffered substantial emotional distress due to Defendant's harassment. *See* N.C. Gen. Stat. § 14-277.3A(c)(2); *see also Bunting*, 266 N.C. App. at 253, 832 S.E.2d at 190.

## III.    Conclusion

Because the State presented substantial evidence of each element of the charge of felony stalking, the trial court did not err in denying Defendant's motion to dismiss.

NO ERROR.

Judges STROUD and STADING concur.